RALPH E. PURVIS AND PATRICIA LEE PURVIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7983-73.    Filed March 30, 1976.

Ralph E. Purvis, pro se.
*Robert J. Chicoine,* for the respondent.

OPINION

The first issue we must decide is whether the interest cost incurred in purchasing the Highland Bell, Ltd., stock which was sold in 1969 may be capitalized under section 266.[2] If we decide this issue for respondent, we need not reach the next issue, namely, whether petitioner properly elected to capitalize the interest under section 266. Petitioner raises a third issue in the nature of a generalized claim for relief under the mitigation provisions of sections 1311 through 1315. Since the statute of limitations is not being invoked here, however, there is no occasion to consider the mitigation provisions.

[2] Sec. 266 reads as follows:
No deduction shall be allowed for amounts paid or accrued for such taxes and carrying charges as, under regulations prescribed by the Secretary or his delegate, are chargeable to capital account with respect to property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable.

Section 266 permits a taxpayer to elect to capitalize, rather than immediately deduct, such taxes and carrying charges as are chargeable to capital account. The regulations under section 266 list as items considered to be chargeable to capital account taxes and mortgage interest on unimproved land, interest on loans to develop real property, and certain costs of installing machinery. Sec. 1.266-1(b), Income Tax Regs. The list ends with the following general category:

Any other taxes and carrying charges with respect to property, otherwise deductible, which in the opinion of the Commissioner are, under sound accounting principles, chargeable to capital account. [Sec. 1.266-1(b)(1)(iv), Income Tax Regs.]

Petitioner argues that interest paid on stock purchased on margin is, under sound accounting principles, chargeable to capital account. Respondent denies this contention, and we agree with respondent.

Neither party contests the validity of the regulation. Nor is either party disputing the characterization of petitioner's interest payments as "carrying charges" within the meaning of section 266, or of petitioner's stock as "property" within the meaning of that section. The parties raise only the issue of whether such payments are chargeable to capital account under sound accounting principles.

The first crucial term in the regulations, "sound accounting principles," is a relative stranger to the tax law. Neither it nor its kinsman, "generally accepted accounting principles," appears in the Code itself. The term "sound accounting principles" appears in only one other place in the regulations, section 301.7701-13(l)(1). The regulations give no indication that this term is to receive any other interpretation than its ordinary non-tax-accounting sense, nor have the parties argued in favor of any special meaning.

The term "chargeable to capital account" is far more frequently encountered in the Code than our first term. See, e.g., secs. 46(d)(5)(D), 174(b)(1)(C), 263(e), 617(b)(1)(A), and 1016 (a)(1). We have been shown no relevant section where the term is not used in its customary accounting sense of capitalization, i.e., being an addition to the cost of an asset. Kohler, A Dictionary for Accountants 82, 84 (2d ed. 1961). We conclude that this term should be given the same meaning here as it normally carries for accountants. Such an interpretation is consistent with the other

examples in the regulations, section 1.266-1(b)(1)(i) through (iii).

The legislative history of section 266, although sparse, is consistent with our view of the regulations. The ancestor of the section first appears in the revenue laws in 1932. Sec. 113(b)(1)(A), Revenue Act of 1932, ch. 209, 47 Stat. 201. See Hearings on H.R. 10236 Before the Senate Comm. on Finance, 72d Cong., 1st Sess. 1393 (1932). Congress, however, did not discuss the section until 1942, when a section substantially similar to present section 266 became part of the Code as section 24(a)(7) (Revenue Act of 1942, ch. 619, sec. 130, 56 Stat. 827). The House report for that Act evinces a concern to relate the tax law's treatment of capitalization of taxes and carrying charges to "proper accounting methods." H. Rept. No. 2333, 77th Cong., 1st Sess. (1942), 1942-2 C.B. 372, 410-411, 434-435; 88 Cong. Rec. 6378 (remarks of Rep. Disney). These passages support our interpretation of the regulations as requiring recourse to the generally accepted principles of accountants. No substantive changes were made to the section when the 1954 Code was enacted. H. Rept. No. 1337, 83d Cong., 2d Sess. A65 (1954).

Whether the interest payments are chargeable to capital account under sound accounting principles is a question of fact, not of law. The factual question is whether under "sound accounting principles," as generally accepted by the accounting profession, interest on margin loans may properly be charged to capital account. Since it is a question of fact, our findings can properly be made only on the basis of the record before us. Petitioner had the burden of proof on this as any other factual issue. Petitioner, however, put on no evidence of his own. Respondent put on an expert witness who testified that under sound accounting principles the cost of an investment in stock is the cash cost plus broker's commissions, transfer tax, and postage, if any, but not including interest paid on funds borrowed to acquire the stock. Clearly petitioner has failed to carry his burden of proof.

We could rest our opinion on this failure of proof alone. However, in view of the fact that petitioner is pro se, although he is a lawyer, we have gone further and made our own independent review of recognized accounting texts as a cross-check on respondent's expert witness. Such texts lend ample support to respondent's expert witness.

Turning to accounting literature, we find that the most authoritative formulator of generally accepted accounting principles for the tax year in issue, the Accounting Principles Board, has not addressed our question. However, the board has indicated that it considers the writers of textbooks to be secondary sources of accounting principles. 1 American Institute of Certified Public Accountants, APB Accounting Principles-Current Text as of June 30, 1973, sec. 1028.05 (1973). These secondary authorities, in their discussion of the presentation of stocks at cost as assets on the balance sheets of business enterprises, have addressed our issue. One leading authority defines the cost of stock as including "brokerage, taxes, and other expenditures related to acquisition." Finney & Miller, Principles of Accounting, Intermediate 253 (6th ed. 1965). Furthermore, another authority notes that "Any interest paid on a subscription contract [for the purchase of stock] should be treated as an interest expense and not capitalized as part of the cost of the investment." Wlesch, Zlatkovich & White, Intermediate Accounting 412 (1968). Also, "Inclusion in the investment account of interest paid on funds borrowed to buy securities either on margin or outright is objectionable." Accountants' Handbook 13-5 (5th ed. Wixon, Kell, Bedford 1970).

Although, except for Wixon, these comments do not specifically disapprove the practice of capitalizing interest on stock bought on margin, they are at least consistent with respondent's position. Additionally, only if these comments are read to disapprove the practice of capitalizing this type of interest can they be consistent with the generally accepted accounting interpretation of cost. For most accountants, the cost of an item means its principal cash outlay, irrespective of the particular method of financing which a purchaser might select. E.g., Keller, "Marketable Securities and Investments," Handbook of Modern Accounting, ch. 12, p. 3 (Sidney Davidson ed. 1970); Seiler, Elementary Accounting 266 (2d ed. 1969); Finney & Miller, *supra* at 142; Devine, "Asset Cost and Expiration," Handbook of Modern Accounting Theory 336 (Morton Backer ed. 1955). See Grady, "Inventory of Generally Accepted Accounting Principles for Business Enterprises," Accounting Research Study No. 7, pp. 64, 228, 239 (1965). The accountant's notion of cost thus may differ from the actual out-of-pocket expenses which an individual may incur in purchasing an item. Compare sec. 1023.26 with sec.

1026.28, American Institute of Certified Public Accountants, supra. Thus petitioner's financing transactions with his brokers would not, under the generally accepted interpretation of cost, increase his cost of acquisition. In the context of fixed assets, such as machinery, the application of this cost principle results in the recording of assets bought on credit at their cash price, with the difference between the credit and cash prices being recorded as interest expense. Finney & Miller, supra at 290-291.

An exception to this cost principle exists in the public utility industry. Accountants in that industry have long accepted the practice of capitalizing the interest incurred in the financing of construction projects. Finney & Miller, supra at 295. And there has been significant movement in the profession to accept such capitalization in other industries which have similar construction lag periods prior to receipt of income. Id. Cf. Commissioner v. Idaho Power Co., 418 U.S. 1, 10-14 (1974). However, the Securities and Exchange Commission, which is also a secondary source for the evolution of accounting principles (American Institute of Certified Public Accountants, supra at sec. 1028.04), has ruled that there shall be a moratorium on the further adoption of this practice in non-public utility areas pending further consideration of this practice by the accounting profession. Securities and Exchange Commission, Accounting Series Release No. 163 (1974).

Even if we were to disregard this moratorium, it is clear that the profession's approval of the capitalization of interest does not extend to our case. Unlike a construction project, the purchasing of stock involves no initial period of preparation and development.

Respondent's expert witness' conclusion is also in accord with certain first principles of accounting, those of conservatism, consistency, and comparability. American Institute of Certified Public Accountants, supra at secs. 1024.23-1024.33 and 1026.35; Finney & Miller, supra at 141, 143-144; Grady, supra at 31-32, 35-36. The principle of conservatism suggests caution in the valuing of assets on the balance sheet. However, to adopt petitioner's view would result in an inflation of values as recorded on the balance sheet. The principle of comparability would likewise be retarded, since, under petitioner's view, firms with identical assets but with different financing methods, one using all cash and the other using all credit, would have significantly

different profiles on their balance sheets. Finally, to the degree that tax returns may be viewed as the individual's equivalent of the firm's balance sheet, petitioner herein has violated the principle of internal accounting consistency by initially deducting the interest charges in issue and now attempting to capitalize them. Although accounting principles are continually evolving, for the tax year in issue these principles appear to provide no support for petitioner's position.

What judicial commentary there has been in the field accords with our conclusion. In *Isaiah Megibow,* 21 T.C. 197, 198-199 (1953), affd. 218 F. 2d 687 (3d Cir. 1955), the taxpayer attempted to capitalize mortgage interest and property taxes to increase his basis in his personal residence. This Court rejected this argument because (1) such expenses are not carrying charges, (2) sound accounting principles do not permit the capitalizing of such expenses, and (3) neither Congress nor the Commissioner of Internal Revenue intended the capitalization of such items. In *Chapin v. McGowan,* 58-1 USTC par. 9469, 1 AFTR 2d 1354 (W.D. N.Y. 1958), affd. per curiam 271 F. 2d 856 (2d Cir. 1959), the District Court held that interest paid by the taxpayer on funds he borrowed to purchase insurance policies on the lives of his relatives was not properly chargeable to capital account and could not be added to his basis in determining gain.

For all the reasons set forth above, we hold for respondent on the first issue. Having done so, we need not reach the second issue. As we have indicated, the third "issue" (the mitigation provisions) has no relevance to this case since the statute of limitations is not involved.

*Decision will be entered for the respondent.*