JUSTIN POPA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3144–78.     Filed October 22, 1979.

Justin Popa, pro se.
*Charles E. Samuel*, for the respondent.

STERRETT, *Judge:* By letter dated October 27, 1977, respondent determined a deficiency in petitioner's income taxes paid for his taxable year ended December 31, 1975, in the amount of $3,206.23. After concessions, the only issue for our decision is whether or not petitioner sustained a casualty loss within the meaning of section 165(c)(3), I.R.C. 1954, when various of his personal possessions, located in the Republic of Vietnam, were

lost when the government of that nation fell to the North Vietnamese.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner Justin Popa timely filed his cash basis individual Federal income tax return for his taxable year ended December 31, 1975, with the Internal Revenue Service Center at Philadelphia, Pa. Mr. Popa's petition was timely filed with this Court on March 23, 1978.[1] At the time he filed his petition herein, Mr. Popa resided in Seoul, Korea.

During the calendar year 1975, petitioner resided in the Republic of Vietnam, serving as the vice president and general manager of the Transworld Services Corp., a foreign subsidiary of the American Trading Co., Inc., a United States corporation. On April 26, 1975, petitioner left Vietnam on one of his frequent business trips to Bangkok, Thailand. He took with him only a suitcase and a briefcase. Everything else petitioner owned, such as furniture, clothing, appliances, books, and stored food stuffs, was left at his rented home in an affluent part of Saigon. Within a matter of days after Mr. Popa's departure from the Republic of Vietnam, that country's government collapsed. United States nationals were ordered evacuated by the President. Petitioner was never able to return to that country and has no reasonable hope of ever recovering his property or its value. None of the goods lost were insured.

In his return, petitioner attached a list of the items which he claims he had to abandon in Vietnam. Petitioner assigned a total fair market value of $12,691 to these items and deducted this amount, less the $100 section 165(c)(3) floor, as a casualty loss on his calendar year 1975 return.[2]

Petitioner also deducted as a separate casualty loss a $500 loan he had made to an acquaintance in 1975. This loan became worthless during that calendar year.

---

[1] The notice of deficiency herein was addressed to the petitioner outside the United States. Sec. 6213(a).

[2] While petitioner's list showed the total value of petitioner's lost property as being $12,691, we note that petitioner's addition was in error and that the actual total value of the items listed is $12,641.50.

OPINION

Respondent has conceded on brief that petitioner is entitled to deduct the full amount of his $500 loan in 1975 as a nonbusiness bad debt under the provisions of section 166(d). We agree that this is the proper treatment for that item. Thus, the only issue left for our decision is whether petitioner is entitled to a casualty loss deduction under section 165(c)(3)[3] with respect to the loss of his household goods following the fall of Saigon to the North Vietnamese.

By contending that petitioner abandoned his property in Saigon, respondent concedes the fact that petitioner has suffered an economic loss. Further, we take it as implicit in respondent's memorandum brief that he also concedes that the loss took place when Saigon fell to enemy troops a day or two after petitioner left on a business trip to Bangkok. Nevertheless, respondent argues that petitioner's loss is nondeductible because it "does not constitute a casualty loss as is contemplated by I.R.C. section 165(c)(3)." Petitioner, on the other hand, argues that his loss in Vietnam was due to an "identifiable event of a sudden, unexpected and unusual nature" which event is ejusdem generis to the events specifically described in section 165(c)(3).

We believe that petitioner's loss of his goods is an "other casualty" within the meaning of section 165(c)(3). We think that petitioner's loss in the fall of Saigon is ejusdem generis to losses due to "fire, storm [and], shipwreck." It was a sudden, cataclysmic, and devastating loss—just the sort of loss section 165(c)(3) was designed to address. We have previously noted that the application of the principle of ejusdem generis—

has been consistently broadened so that wherever unexpected, accidental force is exerted on property and the taxpayer is powerless to prevent application of the force because of the suddenness thereof or some disability, the resulting direct and proximate damage causes a loss which is like or similar to losses arising from the causes specifically enumerated in section 165(c)(3). [*White v. Commissioner*, 48 T.C. 430, 435 (1967).]

[3]SEC. 165(c). LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. \* \* \*

As "the events giving rise to the undisputed loss here were sudden, unexpected, violent and not due to deliberate or willful actions by petitioner," we conclude that these losses are deductible. See *White v. Commissioner, supra* at 433–434.

Our review of the cases convinces us that the only circumstance which could possibly have existed that would require us to deny petitioner his casualty loss would be that the property was confiscated under color of some hastily enacted local law.[4] All the other possibilities (fire, theft, looting, etc.) are such that entitle him to a section 165(c)(3) casualty loss.

Respondent notes in his memorandum brief that "It is extremely doubtful that petitioner knows or will ever know what became of his property, since he was precluded from returning to Vietnam after the U.S. military evacuation." We are, of course, well aware of the legion of cases that hold that the taxpayer must be put to his proof. However, in unusual circumstances such as this, we do not think it fair or reasonable to require that the taxpayer eliminate all possible noncasualty causes of his loss. We do not believe that we unduly stretch the bounds of judicial notice when we take into account the abruptness with which the United States abandoned Saigon and the stories with respect to the heavy damage to the city. A few days before the city fell, the United States Government was actively evacuating its citizens from the city. We can hardly fault petitioner for not remaining to determine whether his property was destroyed by gun fire, by looting, by fire, or some form of seizure by the remaining Saigon residents, the Vietcong, or the North Vietnamese. Certainly, petitioner's failure to return to the city was not a matter of personal choice. Nor can his inexactitude in this matter be held against him.[5]

We note here that the difficulties in South Vietnam did not arise from a revolution from within such as occurred recently in Iran and Nicaragua, thus making less likely the possibility that even a despotic law authorized the taking at issue.

Accordingly, we believe that the most reasonable conclusion, on the particular facts of this case, is that the property at issue was either destroyed or pilfered with criminal intent. Hence, we

---

[4]We note that respondent has not argued that such an enactment took place.

[5]To hold otherwise would be analogous to holding that a taxpayer, who was rescued from his sailboat in a hurricane, was not entitled to a casualty loss because, by not staying aboard, he cannot prove that the boat did not survive the storm.

find the decision in *Farcasanu v. Commissioner*, 436 F.2d 146 (D.C. Cir. 1970), affg. 50 T.C. 881 (1968), relied on by respondent, to be inapposite.

We find more apposite our holding in *Solt v. Commissioner*, 19 T.C. 183 (1952), wherein we allowed a section 23(e) deduction (the 1939 Code predecessor to sec. 165) for the loss in 1954 of a farm, including a residence, attributable to confiscation by the Government of Hungary. See also *Goldner v. Commissioner*, 27 T.C. 455 (1956), although the progenitor to section 165(c)(2), as distinguished from section 165(c)(3), was at issue there.

We, therefore, conclude that petitioner suffered a section 165(c)(3) loss when he lost his goods in Vietnam.[6] See *Davis v. Commissioner*, 34 T.C. 586, 587 (1960).

However, while we hold that petitioner sustained a casualty loss within the meaning of section 165(c)(3), we are not satisfied that petitioner has adequately documented the deductible amount of this loss. For example, petitioner claimed a $1,000 loss with respect to two air conditioners. The $1,000 claim represents petitioner's estimate of the fair market value of these items as of their loss date. Petitioner testified that he had purchased the air conditioners for $800. Of course, only $800 would, therefore, be allowed as a casualty deduction with respect thereto. Sec. 1.165–7(b)(1), Income Tax Regs. In the face of this, and other similar failures in petitioner's proof, we allow petitioner 75 percent of his claimed loss, corrected in amount as shown in note 2 above. *Cohan v. Commissioner*, 39 F.2d 540, 544 (2d Cir. 1930).

*Decision will be entered under Rule 155.*

Reviewed by the Court.

CHABOT, *J.*, concurring: Respondent does not dispute the fact of petitioner's loss of the property left behind when petitioner departed Vietnam on April 26, 1975.

---

[6]We are, of course, aware that Congress saw fit to enact sec. 127, I.R.C. 1939, to ease the burden of proof problem for taxpayers who lost property attributable to actions of a country at war with the United States. But that section in no way was intended to limit or restrict the deduction available to a taxpayer under sec. 23(e)(3), the forerunner of sec. 165(c)(3). Here, respondent has conceded the fact of loss and the timing of the loss. We have simply concluded that the loss must have occurred in circumstances similar to those set forth in the foregoing sec. 165(c)(3).

The parties dispute the amount of the loss; that dispute is resolved in the majority opinion (at page 134).

The parties also dispute the deductibility of the loss.

In the usual case, only one cause of loss is alleged and the issue either is whether that was the cause or whether that cause qualifies the loss for deduction. This case is unusual only in that any of several forces might have caused the loss. In such a situation, I see no warrant for requiring petitioner to show which of several forces, each of which would qualify the loss for deduction, was the cause of the loss.

Petitioner has the burden of proving that it is more likely than not that the loss resulted from "fire, storm, shipwreck, or other casualty, or from theft," within the meaning of section 165(c)(3). The judge who presided at the trial has concluded that petitioner has borne that burden of proof (page 133 of the majority opinion), and nothing in the record herein appears to justify disagreement with that conclusion.

Since the trier of fact has drawn his conclusion "on the particular facts of this case" (*Purvis v. Commissioner*, 65 T.C. 1165, 1169 (1976)), and that conclusion seems to be consistent with the record before us, I see no reason to speculate as to what the record might show if the loss occurred in Iran or Nicaragua. Also, it does not seem to me to be relevant to weigh the difficulty or cost for petitioner, or the Department of State, or someone else, to return to the scene to gather additional evidence, unless it is thought that some variant of the doctrine of *Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947), applies to the case. Since respondent does not raise that question, I would not attempt to analyze the difficulties that petitioner might have faced.

The question before us is whether petitioner has borne his burden of proof. I cannot join in any suggestion that some might read into the majority opinion that the practical hazards of an unsettled world somehow justify a lesser burden of proof. However, I concur in the result because of the majority's conclusion that petitioner has borne his burden of proof, however narrowly, as to deductibility.

GOFFE, *J.*, agrees with this concurring opinion.

FAY, *J.*, dissenting: While I sympathize with petitioner, I must nevertheless respectfully dissent from the majority's conclusion that he sustained a deductible loss.

At the outset, I think it important to bear in mind that not all uninsured economic losses suffered by an individual are deductible. Were that the case, there would be no question that petitioner would be entitled to some deduction for the unfortunate loss of his property. However, section 165(c), I.R.C. 1954, expressly provides otherwise:

(c) LIMITATIONS ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—
(1) losses incurred in a trade or business;
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *

Thus, if an individual's loss is not connected with a trade or business or incurred in a profit-seeking transaction, it is deductible *only if* it arises from casualty, as defined, or theft.

For example, if petitioner abandoned his property as respondent contends, petitioner is not entitled to any deduction, since there is no evidence his personal property was used in a trade or business. *Shea v. Commissioner*, 24 B.T.A. 798, 803 (1931). Indeed, the findings of fact state petitioner himself claimed "he had to abandon [his property] in Vietnam," *supra* at 131. Yet, the majority opinion does not address this possibility despite its statements that "Saigon fell to enemy troops a day or two after petitioner left," *supra* at 132; "the United States abandoned Saigon," *supra* at 133; and "A few days before the city fell, the United States Government was actively evacuating its citizens from the city," *supra* at 133.[1]

Similarly, it is clear petitioner would not be entitled to a loss deduction in the event his property was seized by the North Vietnamese Government after entering Saigon because that would not constitute a "theft." *Farcasanu v. Commissioner*, 50 T.C. 881 (1968), affd. 436 F.2d 146 (D.C. Cir. 1970); *Powers v. Commissioner*, 36 T.C. 1191 (1961). See *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964).

---

[1] In addition, I cannot understand why respondent's argument that petitioner abandoned his property is an implicit concession that the loss occurred when Saigon fell rather than a few days earlier when petitioner left the city.

In the instant case, petitioner and the majority rely upon that part of section 165(c)(3) which permits an individual to deduct the loss of property arising from a "fire, storm, shipwreck, or other casualty."[2] The relevant inquiry therefore is whether petitioner has produced sufficient evidence to "show that he comes within [the statute's] terms." *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). I submit that he has not.

In *Powers v. Commissioner*, 36 T.C. 1191 (1961), the taxpayer purchased an automobile in West Berlin, Germany. Three days later, while enroute from Berlin to Hamburg, the taxpayer's automobile was seized by the East German police and never returned to him. In holding that the taxpayer was not entitled to a deduction for the clear loss he sustained, we stated:

> Petitioner offers some suggestion that his loss was a "casualty" in any event. Assuming that that change of position is now open to him, it is of no assistance. What happened was not like a "fire, storm or shipwreck." Sec. 23(e)(3), I.R.C. 1939. It did not embody the requisite element of "chance, accident or contingency." *Alice P. Bachofen von Echt*, 21 B.T.A. 702, 709 (1930). The deduction was not permissible either as a theft or as a casualty. *Weinmann v. United States*, 278 F.2d 474 (C.A. 2, 1960). Petitioner's loss, though unfortunate, "was no more than a personal expense to petitioner, for the deduction of which the statute makes no provision." *Thomas F. Gurry*, 27 B.T.A. 1237, 1238 (1933). [36 T.C. at 1193.]

In light of *Powers*, and cases which have followed it,[3] it is clear that if petitioner's property was confiscated by the Communist government after the fall of Saigon, he would not be entitled to a casualty loss deduction under section 165(c)(3). However, based upon petitioner's complete lack of knowledge, the wartime circumstances, and judicially noticed "stories with respect to the heavy damage to the city," *supra* at 133, the majority infers

---

[2]For this reason, the cases cited by the majority as supporting its position are in fact of little help. *Goldner v. Commissioner*, 27 T.C. 455, 462 (1956), clearly involved a loss incurred in a transaction entered into for profit. In *Solt v. Commissioner*, 19 T.C. 183, 186, 187 (1952), the exact paragraph of sec. 23(e), I.R.C. 1939 (the predecessor to sec. 165(c)), is not specified. Thus, there is no basis for concluding that a nonbusiness loss was allowed. The findings of fact in *Solt* state: "Although petitioner does not appear to have received much, if anything, in the way of profit from the farm prior to confiscation, *he nevertheless held his interest as an investment and for the production of income*." (19 T.C. at 185; emphasis added.)

[3]*Farcasanu v. Commissioner*, 436 F.2d 146 (D.C. Cir. 1970), affg. 50 T.C. 881 (1968). See *Billman v. Commissioner*, 73 T.C. 139 (1979).

that the property was most likely destroyed or criminally pilfered.[4]

Admittedly, if petitioner's property were destroyed by ordnance or destroyed or pilfered before order was restored, he would be entitled to a casualty loss deduction. See *Davis v. Commissioner*, 34 T.C. 586 (1960) (vandalism). Unfortunately, under the circumstances, petitioner cannot prove the cause of his loss and for that reason, in my opinion, has failed to meet his burden of proof.

In *Allen v. Commissioner*, 16 T.C. 163 (1951), the taxpayer, Mary Allen, entered the Metropolitan Museum of Art in New York wearing a diamond brooch on the left side of her dress. Before leaving the museum less than 2 hours later, Mary discovered that her brooch was missing. After carefully retracing her steps, she was unable to find the brooch. Although she testified that she didn't know whether the brooch was lost or stolen, she nevertheless argued that since the record showed that she was present only in well-lighted rooms that were so constructed that no article could have been lost, someone must have stolen her brooch and she was therefore entitled to a theft loss deduction. The trial judge felt this evidence was sufficient to substantiate her claim of a theft loss. *Allen v. Commissioner*, 16 T.C. at 167 (Judge Opper dissenting). However, in rejecting her claim, we stated:

> She does not, and cannot, prove that the pin was stolen. All we know is that the brooch disappeared and was never found by, or returned to, petitioner.
>
> Petitioner has the burden of proof. This includes presentation of proof which, absent positive proof, reasonably leads us to conclude that the article was stolen. If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail. *If the evidence is in equipoise preponderating neither to the one nor the other conclusion, petitioner has not carried her burden.* [16 T.C. at 166; emphasis added.]

In the present case, the record does not show whether petitioner's property was abandoned by him, confiscated by the North Vietnamese Government, pilfered, or destroyed. In my opinion, any of the above are reasonable inferences. That being

---

[4]The majority gratuitously concludes that the property may have been pilfered with criminal intent—a requisite to proving a theft loss under sec. 165(c)(3). In view of its specific reliance on the "other casualty" language of sec. 165(c)(3), I fail to see the relevance of this speculation.

so, based on *Allen*, I would hold that petitioner has not met his burden of proof by a preponderance of the evidence.

The majority would, however, relieve petitioner of his burden because his inability to determine what happened to his property was not his fault. This problem was addressed in *Burnet v. Houston*, 283 U.S. 223 (1931), wherein the taxpayer claimed it was impossible for him to prove his 1913 basis for stock which became worthless in 1920.[5] The Supreme Court held:

We cannot agree that the impossibility of establishing a specific fact, made essential by the statute as a prerequisite to the allowance of a loss, justifies a decision for the taxpayer based upon a consideration only of the remaining factors which the statute contemplates. * * * The impossibility of proving a material fact upon which the right to relief depends, simply leaves the claimant upon whom the burden rests with an unenforcible claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof. [283 U.S. at 228.]

Finally, I think it important to note that in the past, Congress has enacted special legislation to deal with cases similar to that of petitioner. For example, section 165(i) (repealed 1976) allowed a deduction for losses sustained when a Communist regime came to power in Cuba. In the absence of such legislation, on these facts, I think respondent should prevail. See *Farcasanu v. Commissioner*, 50 T.C. at 890.

TANNENWALD, SIMPSON, and NIMS, *JJ.*, agree with this dissenting opinion.

---

[5] See sec. 202(a)(1), Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1060.