VERNON D. THOMASON and NHU P. THOMASON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thomason v. Commissioner
Docket No. 5589-79.
United States Tax Court
T.C. Memo 1983-563; 1983 Tax Ct. Memo LEXIS 234; 46 T.C.M. (CCH) 1374; T.C.M. (RIA) 83563; September 12, 1983. Vernon D. Thomason and Nhu P. Thomason, pro se. Evelyn E. Small, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioners' 1975 Federal income tax in the amount of $1,790.71. After concessions by respondent, [1] the sole issue before us is whether or not Vernon D. Thomason sustained a casulaty loss within the meaning of section 165(c)(3) [2] when various items of personal property, *235 located in the Republic of Vietnam, were lost when the government of that nation fell to the North Vietnamese. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Vernon D. Thomason (hereinafter petitioner) and Nhu P. Thomason, husband and wife, resided in Lexington, North Carolina, when they filed their petition in this case. They filed their 1975 joint Federal income tax return with the Internal Revenue Service Center, Philadelphia, Pennsylvania.
From some time prior to January 1, 1975 until April 30, 1975, petitioner resided on the third floor of an apartment building located at 23 Gialong Street, Saigon, Republic of Vietnam. The apartment building was located two blocks from the United States Embassy, three blocks from the Navy Yard, five blocks from the Vietnamese Royal Palace, and three blocks from the United *236 States Bachelor Officers Quarters. While in the Republic of Vietnam, petitioner was employed as a logistics superintendent by the Federal Electric Corporation (hereinafter FEC). FEC is a United States corporation which maintained a communications system in Saigon, Vietnam, prior to May 1, 1975. As a logistics superintendent for FEC, petitioner maintained the supply system for repair parts to support the communication systems of the Republic of Vietnam and the United States military. During the latter part of March 1975, the Vietnam war had reached a point where FEC became very concerned about the safety of its employees in Saigon. The company informed its employees that they were free to leave Vietnam at any time, but that the company would appreciate the help of any employees that could stay in Saigon and continue working. Petitioner was unmarried at such time, with no dependents, and he volunteered to stay in Saigon in order to be of assistance to FEC during this critical period. On or about April 18, 1975, petitioner no longer stayed overnight at his apartment on 23 Gialong Street, but instead chose to sleep on the floor of his office, which was located in the Tan Son *237 Nhut Air Force Base. Petitioner stopped by his apartment at 23 Gialong Street on April 28, and at about five or six o'clock that evening, petitioner was still inside of his apartment when extremely heavy gun and rocket fire began in the immediate vicinity of his apartment building. The heavy gun and rocket fire lasted approximately three hours and petitioner did not venture outside of his apartment building that night. Petitioner also observed that evening that Tan Son Nhut Air Force Base was coming under rocket fire. At daybreak the following morning, petitioner left his apartment building to determine what the situation was and he was informed that there had been radio announcements advising Americans that they had twelve hours to evacuate Vietnam. About the same time that petitioner was so informed, the song "White Christmas" was being played on the American military's radio station; this song was the signal that the American evacuation of Saigon was in process. On April 29, 1975, petitioner made various attempts to get back to his office at Tan Son Nhut Air Force Base where he had a jeep, a packed suitcase, a briefcase, and some United States currency.Some of the Vietnamese *238 soldiers who were guarding the main entrance of the base had been drinking beer and were intoxicated. One of these guards levelled a rifle at petitioner, but a Vietnamese captain defused the situation. Petitioner stayed outside the main gate for awhile and, after he thought that things had settled down, he again tried to enter the air force base. One of the Vietnamese soldiers fired some shots in petitioner's direction, which caused petitioner to abandon his idea of trying to enter the base. Later that day, petitioner was able to board a bus which proceeded down to the commercial port. Again, petitioner found a mass of confusion and some drunken Vietnamese soldiers firing their guns in the air. Petitioner was unable to get on a barge or any of the ships that were lying offshore, but he did observe helicopters which were heading in the direction of the United States Embassy. Just past midnight and during the early hours of April 30, 1975, petitioner managed to gain entry to the United States Embassy compound. At about four o'clock that morning, petitioner was evacuated from Saigon, with the assistance of the United States Marines. Petitioner left Saigon with only the clothes *239 that he was wearing; leaving all of the rest of his property at his apartment at 23 Gialong Street except for some items which were left at his office at Tan Son Nhut Air Force Base. Shortly after petitioner's departure from the Republic of Vietnam, that country's government collapsed. United States Nationals were ordered evacuated by the President. Petitioner was never able to return to that country and he has no reasonable hope of ever recovering his property or its value. On his 1975 Federal income tax return, petitioner claimed a casualty loss in the amount of $5,587.56. In order to itemize this claimed casualty loss, petitioner submitted to the Internal Revenue Service a list of items which he claims he had to abandon in Vietnam.[3] Petitioner assigned a total fair market value of $5,522 to these items, exclusive of 125,000 South Vietnamese piasters which he had on deposit in a bank in Saigon. These piasters represented approximately $165.56 in United States currency prior to the collapse of the government of the Republic of Vietnam. Thus, petitioner's claimed casualty loss deduction on his 1975 return is attributable entirely to property he left behind in Vietnam, including *240 the piasters, less the $100 floor set forth in section 165(c)(3). [4] In the notice of deficiency, respondent disallowed petitioner's claimed casualty deduction. OPINION We must determine whether petitioner is entitled to a casualty loss deduction under section 165(c)(3) with respect to the loss of his property following the fall of Saigon to the North Vietnamese. By contending that petitioner abandoned his property in Saigon, respondent concedes the fact that petitioner *241 has suffered an economic loss. Moreover, given respondent's position (set forth, infra) we take it as implicit that he concedes that petitioner's loss took place when Saigon fell to enemy troops on or about April 30, 1975. Nevertheless, respondent maintains that petitioner's loss is nondeductible because petitioner has failed to establish that his loss in Vietnam was a casualty loss within the meaning of section 165(c)(3). [5] Petitioner, on the other hand, argues that his loss in Vietnam was due to an identificable event of a sudden, unexpected, and unusual nature, which event is ejusdem generis to the events specifically described in section 165(c)(3). For the reasons set forth below, we agree with petitioner. *242 In Popa v. Commissioner,73 T.C. 130 (1979), we were faced with a similar situation involving a taxpayer who suffered an economic loss when Saigon fell to enemy troops during 1975. The Commissioner contended that the taxpayer's loss was nondeductible because it did not constitute a casualty loss as is contemplated by section 165(c)(3). In holding that the taxpayer was entitled to a section 165(c)(3) casualty loss, we stated as follows ( Popa v. Commissioner,supra at 133-134): Our review of the cases convinces us that the only circumstance which could possibly have existed that would require us to deny petitioner his casualty loss would be that the property was confiscated under color of some hastily enacted local law. All the other possibilities (fire, theft, looting, etc.) are such that entitle him to a section 165(c)(3) casualty loss. [Footnote omitted.] Respondent notes in his memorandum brief that "It is extremely doubtful that petitioner knows or will ever know what became of his property, since he was precluded from returning to Vietnam after the U.S. military evacuation." We are, of course, well aware of the legion of cases that *243 hold that the taxpayer must be put to his proof. However, in unusual circumstances such as this, we do not think it fair or reasonable to require that the taxpayer eliminate all possible noncasualty causes of his loss. We do not believe that we unduly stretch the bounds of judicial notice when we take into account the abruptness with which the United States abandoned Saigon and the stories with respect to the heavy damage to the city. A few days before the city fell, the United States Government was actively evacuating its citizens from the city. We can hardly fault petitioner for not remaining to determine whether his propety was destroyed by gun fire, by looting, by fire, or some form of seizure by the remaining Saigon residents, the Vietcong, or the North Vietnamese. Certainly, petitioner's failure to return to the city was not a matter of personal choice. Nor can his inexactitude in this matter be held against Him. [Footnote omitted.] We note here that the difficulties in South Vietnam did not arise from a revolution from within such as occurred recently in Iran and Nicaragua, thus making less likely the possibility that even a despotic law authorized the taking at issue. *244 Accordingly, we believe that the most reasonable conclusion, on the particular facts of this case, is that the property at issue was either destroyed or pilfered with criminal intent. Hence, we find the decision in Farcasanu v. Commissioner,436 F. 2d 146 (D.C. Cir. 1970), affg. 50 T.C. 881 (1968), relied on by respondent, to be inapposite. In the instant case, respondent maintains that he has proven that the facts judicially noticed in Popa v. Commissioner did not present the complete picture. Respondent maintains that the testimony of Peter Arnett [6] (hereinafter Mr. Arnett), a journalist who remained in Saigon after the United States evacuation, establishes that petitioner's loss "resulted from the abandonment of property and then from its confiscation by the North Vietnamese government." Further, respondent maintains that Mr. Arnett's testimony shows that petitioner's property was not lost through looting or from destruction by bombing or shelling. Upon careful review of Mr. Arnett's testimony and the other evidence in the record, we find nothing misleading, incomplete, or inappropriate with respect to the facts judicially noticed in *245 Popa.
The facts judicially noticed in Popa, specifically, "the abruptness with which the United States abandoned Saigon" and accounts "with respect to the heavy damage to the city" were reported by the news media and we do not think that respondent questions those statements as a general matter. [7] Rather, respondent through the testimony of Mr. Arnett, has attempted to focus the Court on the vicinity of petitioner's residence in Vietnam and show that there was, at most, only sporadic bombing and looting, thus making it unlikely that petitioner's property was either destroyed or pilfered with criminal intent. While we were impressed with Mr. Arnett as a witness and found him to be credible, we think that respondent has placed too much reliance *246 on Mr. Arnett's testimony. In addition, we think that respondent has overlooked certain aspects of Mr. Arnett's testimony which we find to be favorable to petitioner's case. During both his direct and cross-examination, Mr. Arnett was very careful to qualify his testimony concerning events on Gialong Street, where petitioner's apartment was located. With respect to looting at petitioner's apartment or the vicinity thereof, Mr. Arnett testified that he did not live in petitioner's building and that, "I can't speak for any other [building] than the building I was in." While Mr. Arnett did sometimes walk along Gialong Street, his testimony indicated that he was not generally stationed there as an obsever, but rather passing by after visiting the American Embassy. Mr. Arnett's testimony with respect to the airport at Tan Son Nhut, the vicinity of petitioner's jeep and some of his other property clearly establishes that such location had been a target of enemy rocket fire during the final days of the government of the Republic of Vietnam.Moreover, while Mr. Arnett testified that by noon of April 30, 1975, Saigon was somewhat orderly, [8] this testimony fails to establish that petitioner's *247 property was not stolen prior to that time. In fact, Mr. Arnett gave testimony of a flourishing black market that continued in Saigon even after the city fell to enemy troops. The functioning of the black market, as Mr. Arnett even testified, was an indication that looting was going on and that looters were supplying the black market with stolen goods. As the trier of fact, we must try to determine what happened to petitioner's property in Vietnam. In light of the facts judicially noticed in Popa, Mr. Arnett's testimony regarding the existance of a strong black market and rocket fire in the vicinity of the airport at Tan Son Nhut, and the record as a whole, we think it is more likely than not that petitioner's property, excluding the piasters, was either destroyed or pilfered with criminal intent. [9] While it is possible that petitioner's property was confiscated by the North Vietnamese under color of law, we are not convinced, on the record before us, that this occurred. See Popa v. Commissioner,supra at 133-134; *248 Farcasanu v. Commissioner,436 F. 2d 146 (D.C. Cir. 1970), affg. 50 T.C. 881 (1968). Consequently, we hold that petitioner suffered a section 165(c)(3) loss when he host his goods in Vietnam. See Popa v. Commissioner,supra at 134. Finally, respondent claims that petitioner has failed to adequately substantiate his loss. Since we have held that petitioner sustained a casualty loss within the meaning of section 165(c)(3), petitioner's deductible loss is limited to the lesser of his adjusted basis in the property or its fair market value, less the $100 floor applicable to the year in issue. Section 1.165-7(b)(1), Income Tax Regs. We received in evidence the list which petitioner had originally submitted to the Internal Revenue Service along with his 1975 Federal income tax return and which he subsequently supplemented. [10] This list itemizes each article of petitioner's *249 property, his adjusted basis in such property, and its fair market value. [11] Understandably, petitioner was unable to offer into evidence receipts for his purchases as he testified that he had to leave Vietnam with only the clothes that he was wearing. We found petitioner to be a very credible and straightforward witness, and we find that his testimony and itemized list concerning the amount of his loss adequately substantiate his claim (except with respect to the piasters). Since petitioner's claimed loss must be reduced by the fair market value of the piasters, or $165.56, Decision will be entered under Rule 155.
Footnotes
1. Respondent has conceded an adjustment set forth in the notice of deficiency pertaining to the deductibility of claimed "rental expenses." As a result of this concession the deficiency determined by responsent is now in the amount of $1,528.70. ↩
2. Section references are to the Internal Revenue Code of 1954, as amended.↩
3. The record indicates that petitioner originally attached this list to his 1975 Federal income tax return, which he filed with the Internal Revenue Service. On September 18, 1981, petitioner supplemented the list for respondent's counsel to show what he believes was the cost of the items in question. ↩
4. For taxable years beginning after December 31, 1982, see new section 165(h), added to the Code by section 203(a), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 422 which generally limits casualty losses for an individual to the amount that each such loss exceeds $100 and the aggregate amount of all such losses exceeds 10 percent of the individual's adjusted gross income.↩
5. SEC 165(c). Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * ↩
6. Peter Arnett testified that, during 1975, he was employed by the Associated Press as a special correspondent, and that he worked in Saigon from the middle of March until approximately May 23 of that year.↩
7. If respondent is attempting to question these statements as a general matter, we reject his efforts and refer respondent to read the newspaper accounts of the fall of Saigon, which are too numerous to mention here.↩
8. Mr. Arnett did state that robberies (i.e., criminal activity) continued after that time, however, the frequency of such occurances did slow down.↩
9. We think that the more likely cause of the piasters becoming worthless would appear to be governmental action by the North Vietnamese outlawing South Vietnamese currency as a medium of exchange. See Billman v. Commissioner,73 T.C. 139↩ (1979).
10. See note 3, supra.↩ Respondent did not object to the admission of this list in evidence. 11. Petitioner computed his loss in accordance with the provisions of section 1.165-7(b)(1), Income Tax Regs.↩