T.C. Memo. 2000-154


UNITED STATES TAX COURT


RANDALL MARK JACOBSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19890-97.                          Filed May 5, 2000.


        P prepared Forms 1040 as joint tax returns for 1993,
1994, and 1995.  P made substantial payment of estimated tax
for each of these years; each year's Form 1040 directed that
the overpayment shown thereon be applied to the next year's
estimated tax.  Respondent determined that P had not filed tax
returns and sent a notice of deficiency to P for each of these
years.  The parties have agreed that P's tax liability for
each of these years is slightly more than the liability shown
on the Form 1040.  P contends that each tax return was filed
on or about Oct. 15, the extended due date of the tax return.
R contends that P filed tax returns for all 3 years on Dec. 4,
1998, and not before.

        1.   <u>Held</u>:  On the basis of the record herein, P has
carried his burden of proving that it is more likely than not
that he filed joint tax returns for 1993, 1994, and 1995 on or
before Mar. 11, 1997, the date which is shown as the return
received date on the transcript of account for each of the 3
years.

2. Held, further: P has failed to carry his burden of proving that his tax return for any of the 3 years was filed less than 4 months and 1 day after the extended due date for that tax return.

Randall Mark Jacobson, pro se.

Richard A. Stone, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHABOT, Judge: Respondent determined deficiencies in individual income tax and additions to tax under sections 6651(a)(1)[1] (late filing of tax return) and 6654 (underpayment of estimated tax) against petitioner as follows:

|  |  | Additions to Tax | |
| Year | Deficiency[1] | Sec. 6651(a(1) | Sec. 6654 |
| 1993 | $61,611 | -- | $240 |
| 1994 | 54,821 | $4,955 | 993 |
| 1995 | 64,679 | 9,295 | 2,841 |

[1] Of these amounts, $10,279 for 1993, $11,483 for 1994, and $12,200 for 1995 are self-employment taxes, under ch. 2; the remaining amounts are ch. 1 income taxes.

After concessions by both sides,[2] the issue for decision is

[1] Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1986 as in effect for the years in issue.

[2] The parties' agreements are sufficient to calculate the amount of petitioner's and Evalyn V. Jacobson's joint tax liability for each year. At the time of the trial, the parties stipulated that petitioner had a 1993 overpayment of about $41,000, a 1994 overpayment of about $7,000, and a 1995 underpayment of about $9,000. Respondent concedes the additions to tax for 1993 and 1994.

whether petitioner's tax returns for the years in issue were filed (1) on or about December 4, 1998, (2) on or about October 15 of the respective year (the last day of the extended filing period), or (3) some other date or dates. The parties understand that allowability of credits or refunds of overpayments for 1993 and 1994 and liability for additions to tax for 1995 will be resolved by our determinations as to dates of filing.

FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, petitioner resided in Clarksville, Maryland. For all relevant times, petitioner has been married to Evalyn V. Jacobson, hereinafter sometimes referred to as Evalyn.

In or about the 17th week of 1993, respondent posted as of April 18, 1993, petitioner's $7,500 payment of 1993 estimated tax.

In or about the 26th week of 1993, respondent posted as of June 19, 1993, petitioner's $10,000 payment of 1993 estimated tax.

In or about the 39th week of 1993, respondent posted as of September 18, 1993, petitioner's $15,000 payment of 1993 estimated tax.

In or about the 6th week of 1994, respondent posted as of January 15, 1994, petitioner's $20,000 payment of 1993 estimated tax.

In or about the 19th week of 1994, respondent posted as of

April 15, 1994, petitioner's $12,500 payment of 1993 income tax.

In or about the 18th week of 1994, respondent posted as of April 18, 1994, petitioner's $8,000 payment of 1994 estimated tax.

In or about the 26th week of 1994, respondent posted as of June 21, 1994, petitioner's $8,000 payment of 1994 estimated tax.

On August 17, 1994, respondent received from petitioner and Evalyn a Form 2688[3], Application for Additional Extension of Time To File U.S. Individual Income Tax Return, asking that the time for filing their 1993 tax return be extended to October 15, 1994. Respondent approved this request.

In or about the 39th week of 1994, respondent posted as of September 20, 1994, petitioner's $8,000 payment of 1994 estimated tax.

In or about the 5th week of 1995, respondent posted as of January 19, 1995, petitioner's $8,000 payment of 1994 estimated tax.

In or about the 8th week of 1995, respondent posted as of April 15, 1993, petitioner's and Evalyn's $16,571.20 claimed 1992 overpayment as a payment of 1993 estimated tax. See infra note 4 and related text for later modification.

In or about the 18th week of 1995, respondent posted as of April 15, 1995, petitioner's $3,000 payment of 1994 income tax.

---

[3]The stipulation states that the document is Form 2868. The document itself, a Form 2688, plainly is what the parties intended to describe, and we so interpret the stipulation. See, e.g., Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976).

In or about the 19th week of 1995, respondent posted as of April 15, 1995, petitioner's $1,000 payment of 1995 estimated tax.

In or about the 27th week of 1995, respondent posted as of June 23, 1995, petitioner's $8,000 payment of 1995 estimated tax.

On or about August 21, 1995, respondent received from petitioner and Evalyn a Form 2688 (see supra note 3) asking that the time for filing their 1994 tax return be extended to October 15, 1995.

In or about the 30th week of 1995, respondent posted as of September 20, 1995, petitioner's $8,000 payment of 1995 estimated tax.

On or about October 18, 1995, respondent received from petitioner and Evalyn an unsigned 1992 tax return, consisting of a Form 1040 and a Form 6251, relating to alternative minimum tax for individuals. Petitioner and Evalyn sent this document by certified mail. The Form 6251 shows an alternative minimum tax of $221.07, as does the Form 1040, line 48. The Form 1040 shows a direction by petitioner and Evalyn that their 1992 overpayment, in the amount of $16,350.13[4] be applied to their 1993 estimated tax. On December 22, 1995, petitioner sent to respondent a follow-up letter attached to which is an unsigned 1993 tax return consisting of a Form 1040 without any attachments. Petitioner sent this document by

---

[4]The original claimed overpayment (discussed supra), $16,571.20, less $221.07, equals $16,350.13.

certified mail.  The letter asks respondent to reduce to $16,350.13 the amount of 1992 overpayment applied to petitioner's 1993 tax liability.  In or about the 8th week of 1996, respondent posted as of April 15, 1993, a $221.07 offset to the previously posted payment of $16,571.20 of 1993 estimated tax.

In or about the 7th week of 1996, respondent posted as of February 5, 1996, petitioner's $8,000 payment of 1995 estimated tax.

In or about the 18th week of 1996, respondent posted as of April 15, 1996, petitioner's $2,500 payment of 1995 income tax.

On or about May 2, 1997, respondent sent letters to petitioner stating that petitioner apparently had not responded to requests for copies of his tax returns for 1993 and 1994, so respondent calculated taxes and proposed penalties for those years based on payor information.  On or about May 30, 1997, respondent sent a similar letter to petitioner about 1995.  On or about May 31, 1997, petitioner responded that his 1993 tax return had been filed on October 15, 1994, and that that tax return "was ammended [sic] to lower the overpayment applied from the 1992 return."  See supra note 4 and related text regarding the $221.07 1992 minimum tax.

On or about June 24, 1997, respondent replied as follows:

Dear Taxpayer:

We are writing you concerning your income tax return(s) for the year(s) indicated above. [1993]

We have considered the information you sent us on May 31, 1997.  Please return a signed copy of your 1993 return with the completed Schedule A to support your itemized deductions.

Please return this information within 15 days of the date of this letter. If it is necessary to call you, please provide your telephone number and the best time to call.

On or about July 11, 1997, petitioner sent to respondent by certified mail, the following letter:

This letter responds to your correspondence of May 30, 1997.

I have not received any previous request for my 1995 Form 1040.

Enclosed is a copy of my ammended [sic] 1995 Form 1040.

While reviewing documents, I noticed an error on line 18 of my 1993 Form 1040.

Also enclosed is a copy of my ammended [sic] 1993 and 1994 Form 1040s.

Accompanying this letter were unsigned copies of petitioner's and Evalyn's Forms 1040 for 1993, 1994, and 1995.

On or about July 31, 1997, respondent replied[5] that the material petitioner sent was inadequate, and that petitioner should send signed copies of the Forms 1040, together with Schedules A, B, C, and E. In the meanwhile, on July 3, 1997, respondent had sent notices of deficiency to petitioner for 1994 and 1995. On August 26, 1997, respondent sent a notice of deficiency to petitioner for 1993.

Table 1 shows selected information from certain documents and stipulations in the record.

---

[5]The parties have stipulated that Exhibit 15-J is a "Letter to respondent from petitioner concerning petitioner's 1993, 1994, and 1995 federal income tax returns". Our finding is in accord with Exhibit 15-J, which clearly is a letter to petitioner from respondent. See supra note 3.

## Table 1

### 1993

| | Ex. 8-J (Recd. by R Dec. 22, 1995) | Ex. 14-J (Recd. by R July 22, 1997) | Ex. 1-J (Notice of def. dtd. 8-26-97) | Ex. 16-J (Transcript of acct. dtd. 12/09/1998) | Stipulation |
|---|---|---|---|---|---|
| Adjusted gross income | $183,839.47 | $188,810.09 | -- | -- | $196,110.53 |
| Total tax liability | 37,603.19 | 39,072.41 | $61,611 | -- | [1] |
| Payments on or before April 15, 1994 | 81,350.13 | 81,350.13 | 81,350 | $81,350.13 | 81,350.13 |
| Overpayment | 43,746.94 (To be applied 1994 estimated tax.) | 42,277.72 (To be applied to 1994 estimated tax.) | 19,739 | -- | 41,000.00 (Approximately) |

[1] From the parties' stipulations as to payments made and overpayment, it appears that petitioner's and Evalyn's total 1993 tax liability is about $40,000.

(Table 1, continued)

1994

| | Ex. 14-J (Recd. by R July 22, 1997) | Ex. 2-J (Notice of def. dtd. 7-03-1997) | Ex. 17-J (Transcript of acct., dtd. 12/09/1998) | Stipulation |
|---|---|---|---|---|
| Adjusted gross income | $135,736.42 | -- | -- | $138,981.26 |
| Total tax liability | 27,150.64 | $54,821 | -- | [2] |
| Payments on or before April 15, 1995 | [3]77,277.72 | 35,000 | $35,000.00 | 35,000.00 |
| Overpayment | 50,127.08 (To be applied to 1995 estimate tax.) | (54,821) | -- | 7,000.00 (Approximately) |

[2] From the parties' stipulations as to payments made and overpayment, it appears that petitioner's and Evalyn's total 1994 tax liability is about $28,000.

[3] Evidently includes $42,277.72 amount of claimed 1993 overpayment to be applied to 1994 estimated tax.

(Table 1, continued)

1995

| | Ex. 14-J (Recd. by R July 22, 1997) | Ex. 3-J (Notice of def. dtd. 7-0-97) | Ex. 18-J (Transcript of acct., dtd. 12/09/98) | Stipulation |
|---|---|---|---|---|
| Adjusted gross income | $158,598.30 | -- | -- | $162,341.89 |
| Total tax liability | 35,110.17 | $64,679 | -- | [4] |
| Payments on or before April 15, 1996 | [5]77,627.08 | 27,500 | $27,500.00 | 27,500.00 |
| Overpayment | 42,516.91 (To be applied to 1996 estimated tax.) | (37,179) | -- | (9,000.00) (Approximately) |

[4] From the parties' stipulations as to payments made and underpayment, it appears that petitioner's and Evalyn's total 1995 tax liability is about $36,000 to $37,000.

[5] Evidently includes $50,127.08 amount of claimed 1994 overpayment to be applied to 1995 estimated tax.

Petitioner and Evalyn filed a joint tax return for 1992 and a joint tax return for 1996.

Petitioner did not file Maryland State tax returns for the years in issue by October 15 of the following year.

_____

Petitioner and Evalyn filed joint tax returns for 1993, 1994, and 1995 on or before March 11, 1997.

OPINION

From the parties' stipulations, it appears that the parties agree that petitioner's and Evalyn's total tax liability for the 3 years in issue is about $104,000 to $105,000 and that petitioner's payments toward these 3 years' liabilities total about $144,000.

Respondent contends that credit or refund of petitioner's and Evalyn's 1993 and 1994 overpayments is time-barred, that petitioner has a 1995 underpayment of about $9,000, and that petitioner also is liable for 1995 additions to tax under sections 6651(a) and 6654. These contentions are based on respondent's position that petitioner did not file tax returns for these 3 years until December 4, 1998.

Petitioner maintains that credit or refund of his 1993 and 1994 overpayments is not time-barred and that he is not liable for any 1995 additions to tax, and that these results depend upon when

he and Evalyn filed their tax returns for 1993, 1994, and 1995.[6]

We agree with a major element of petitioner's contentions, that petitioner's and Evalyn's joint tax returns for all 3 years were filed on or before March 11, 1997.

Respondent's determinations as to matters of fact in the notice of deficiency are presumed to be correct, and petitioner has the burden of proving otherwise. See Rule 142(a) of the Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111, 115 (1933); Anson v. Commissioner, 328 F.2d 703, 706 (10th Cir. 1964), affg. Bassett v. Commissioner, T.C. Memo. 1963-10.

Respondent stresses the improbability of the "scenario" of respondent's losing petitioner's tax returns for 3 consecutive years while at the same time retaining in respondent's files unsigned copies of petitioner's and Evalyn's partial tax returns. Respondent urges us instead to credit "Respondent's computer records [which] demonstrate that the respondent did not receive signed, complete tax returns before December 4, 1998."

On the other hand, we regard as improbable the scenario of

---

[6]In his opening statement at trial, petitioner stated that he and Evalyn filed their joint tax return for each of the years in issue on or about Oct. 15 of the following year, having first asked for and received extensions of time for filing. While on the witness stand, petitioner clearly testified to the same effect as to 1993 and 1994, and inferentially to the same effect as to 1995. On opening brief, petitioner proposed Findings of Fact that his 1993 and 1994 tax returns were filed on Oct. 15 of the following year, and that he filed an amended 1995 tax return on July 15, 1997. On answering brief, petitioner contends that "Complete, signed returns for 1993, 1994, and 1995 were filed within 2 years of the last payment for the given year."

petitioner's not filing tax returns for 3 consecutive years while at the same time--

> (1) taking the trouble to make 4 payments of estimated tax and one payment of income tax for each year;

> (2) filing a timely initial request for extension of time to file the tax return for each year;[7] and

> (3) submitting an unsigned copy of a Form 1040 for each year which shows a liability amount that is quite close to the amount the parties agreed to in their stipulations.[8]

We are troubled by respondent's treatment, on answering brief, of the testimony of respondent's witness, Michael Hartz (hereinafter sometime referred to as Hartz), with respect to a March 11, 1997, date that appears on the stipulated transcript of account for each of the years in dispute.

Respondent states as follows:

> Respondent's transcripts for 1993, 1994 and 1995 contain a date of March 11, 1997 (Exs. 16-J, 17-J and 18-J).  At trial an agent of respondent [Hartz] testified that as a result of

---

[7]Although the record does not appear to contain direct evidence of such filings, we infer this conclusion from the fact that the transcript of petitioner's account for each year shows a payment as of April 15 of the following year.


[8]Table 1, see supra, shows the following:

| Year | Amount Shown by P on Ex. 14-J | Amount Derived From Stipulation |
|------|-------------------------------|---------------------------------|
| 1993 | $39,072.41 | About $40,000 |
| 1994 | 27,150.64 | About  28,000 |
| 1995 | 35,110.17 | About  36 to 37,000 |

the fact that the accounts for each of the three years, 1993, 1994 and 1995, contain the same March 11, 1997 date, that the date on the transcript is merely a date for respondent's internal use, such as a disposal code or for control purposes (Tr. 36, lines 5-6 and 9-13).

The trial transcript shows that, immediately after testifying that the March 11, 1997, date appears "maybe" for respondent's internal use (TR. 36, Lines 5-6), Hartz stated, "I have no--I really can't give you a definitive answer because I have not worked there, <u>so I don't know</u>." (Emphasis added.) (TR. 36, lines 6-8.) Also, immediately after testifying that the March 11, 1997, date "may" have been done for control purposes (TR. 36, lines 9-13), Hartz stated: "but that's <u>strictly</u>, you know, <u>speculation on my part</u>." (Emphasis added.) (TR. 36, lines 13-14.) These were Hartz' responses to questions on redirect examination by respondent's counsel, who authored the brief. Evidently, respondent's counsel was not happy with the full responses his witness gave at trial; he apparently decided to emulate Procrustes by cutting off that part of Hartz' testimony that did not fit with the point respondent's counsel wanted to make.

This redirect examination came immediately after the following cross-examination:

Q [Petitioner] Okay. And one other question. On 16-, 17- and 18-J, there is something called "return received date--

A [Hartz] Uh-huh.

Q --March 11, 1997."

A Yes.

Q  What does that mean?

A  Normally, that is the date the return is received, but in this case, I cannot tell you why the Service Center put that date in there.  I can only speculate.

Q  But in general, that would be the date that they-- they claim they received a filed return?

A  In general, that's correct.

Q  Okay.  And that's in there for all three years?

A  That's correct.

Q  16-, 17- and 18-J?

A  That's correct.  It's the same date on all three years.

Respondent's counsel produced the transcripts of account, and called Hartz as a witness, to show that respondent's records do not show that petitioner filed a tax return for 1993, 1994, or 1995 before December 4, 1998.  However, as the foregoing makes plain, each of the transcripts of account appears to show that respondent received petitioner's tax return for each year as of March 11, 1997.  Respondent's counsel did not have a witness who could explain this inconsistency that was apparent on the face of each transcript of account.

We had already concluded that it is more likely than not that petitioner and Evalyn filed a tax return for each year before December 4, 1998.  See Popa v. Commissioner, 73 T.C. 130, 133, 135 (concurring opinion) (1979).  In light of the evidence on respondent's transcripts of account, together with the testimony of respondent's chosen witness, we conclude, and we have found, that

it is more likely than not that petitioner and Evalyn filed their tax returns for 1993, 1994, and 1995 on or before March 11, 1997. We so hold.

However, we do not have credible evidence that petitioner and Evalyn filed their tax returns for any of these years on or before the extended tax return due dates for the respective years, or even that any of these tax returns was filed less than 4 months and 1 day after the respective extended due date.  See supra note 6. Accordingly, petitioner has failed to carry his burden of proving that his tax returns were filed less than 4 months and 1 day after their extended due dates.  As a result, if there is a net amount due (see sec. 6651(b)(1)) after application of the foregoing, then petitioner will be liable for an addition to tax under section 6651(a)(1) in the amount of 25 percent of that net amount.

To take account of the foregoing, including the parties' concessions, see supra note 2,

Decision will be entered under Rule 155.