BERNARD C. BILLMAN AND BUT THI BILLMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10747–77.     Filed October 22, 1979.

Bernard C. Billman, pro se.
*Mark D. Petersen*, for the respondent.

---

[5]See sec. 202(a)(1), Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1060.

OPINION

TIETJENS, *Judge:* Respondent determined a deficiency in Federal income tax for the year 1975 against petitioners in the amount of $3,192.62.

The only issue is whether petitioners Bernard C. Billman and But Thi Billman sustained a deductible loss of any kind under the Internal Revenue Code of 1954, when certain South Vietnamese currency which they owned, held in 1975, and still hold, became worthless on approximately April 30, 1975.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits are incorporated herein by reference.

As stipulated, the following are the facts.

Petitioners Bernard C. Billman and But Thi Billman were residents of Fort Worth, Tex., at the time the petition herein was filed. They filed a joint Federal income tax return for the year 1975 with the Director of Internal Revenue Service in Austin, Tex.

On October 7, 1977, respondent sent to petitioners a statutory notice of deficiency via certified mail, setting forth the deficiencies for taxable year 1975 in the amount of $3,192.62.

During the period of 1966 through 1970, Bernard worked in Saigon, South Vietnam, for the Navy in a civilian capacity. While there, he met But Thi and decided to marry her.

They planned after their marriage, and Bernard retired in 1975, that they would remain in Vietnam. It was their hope to purchase a home in Vietnam on retirement.

Since there was very little credit obtainable in Vietnam at that time, and a good house ran from 8 to 15 million piasters, petitioners began saving Vietnamese piasters before their marriage.

Early in 1970, Bernard was caught in a reduction in force and had to return to the United States. At that time, he had saved approximately 10,400,000 South Vietnamese piasters. He left one-third of the piasters with his wife-to-be and loaned, interest free, approximately two-thirds of them to But Thi's family. But Thi left the one-third she had in the custody of her family when she came to the United States in 1972.

Early in 1975, But Thi's family mailed all the piasters to Bernard, including the amount loaned to them. On April 30, 1975, the United States withdrew from South Vietnam very

suddenly, and the South Vietnamese Government fell to North Vietnamese invasion. Bernard was unable to get his Vietnamese currency exchanged into American dollars before the fall. After the fall, the South Vietnamese currency was worthless.

On their 1975 income tax return, petitioners claimed a casualty loss as a result of the worthlessness of their Vietnamese currency.

The parties agree that just before the fall of the government, the Vietnamese currency involved was worth approximately $14,857.

Bernard was not a dealer in currency at any time while in Vietnam.

No doubt these taxpayers suffered an economic loss. But was it a "deductible" loss for tax purposes under the Internal Revenue Code? Petitioners' primary argument, so far as we can ascertain from their briefs, is that the decrease in value of their Vietnamese currency because of the North Vietnamese "take over," or whatever it was, in 1975, and the United States' withdrawal from that part of the world at that time was a "casualty loss."[1] They argue that these events were "a very sudden and unexpected happening, something that was without precedent in the history of the United States." That can well be. Nevertheless, they must prove that this loss was a "casualty" loss within the meaning of the statute. We do not believe it was, no matter the reality of a loss to petitioners.

Somehow (even with the help of ejusdem generis), we smell a difference between being struck by lightning or having your property burned by fire and having your currency lose its value because of economic events.

We cannot believe that the Internal Revenue Code was designed to take care of *all* losses that the economic world may bestow on its inhabitants. It is restricted in its description of a casualty loss to "losses aris[ing] from fire, storm, shipwreck, or other casualty, or from theft." Certainly these taxpayers did not suffer from "fire, storm, [or] shipwreck." Of course they suffered. But, was it from "other casualty?" To us "other casualty" means a similar kind of occurrence to "fire, storm, [or]

---

[1]All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

Sec. 165(c)(3) provides, in part:

losses aris[ing] from fire, storm, shipwreck, or other casualty, or from theft.

shipwreck." Nor can we bring ourselves to believe the kind of loss here involved is otherwise covered by the statutory language. For instance, after the Castro regime took over in Cuba, Congress enacted I.R.C. section 165(i)(1)(B) to take care of certain losses related thereto. (Repealed by Pub. L. 94–455, sec. 1901(a)(26), 90 Stat. 1520.) No such legislation has resulted from the Vietnamese fiasco.

We can find no cases precisely in point. But, there are a number of decisions in which the courts have decided against taxpayers which come close. See *Powers v. Commissioner*, 36 T.C. 1191 (1961) (car confiscated by East German officials); *Farcasanu v. Commissioner*, 50 T.C. 881 (1968) (furnishings and art objects seized or confiscated by Rumanian Government between 1946 and 1952); *Gurry v. Commissioner*, 27 B.T.A. 1237 (1933) (attorney's fees to recover car seized by Germans during World War I); *Richter v. Commissioner*, T.C. Memo. 1965–88 (bank deposit, life insurance policy, etc., confiscated by the Czechoslovakian Government).

In this case, it should be pointed out that the taxpayers still possess (at least when this case was begun) the very currency whose value they claim to have lost. There has been no sale or exchange of that currency. We know of no section of the Internal Revenue Code of 1954 which would allow them a deduction.[2]

*Decision will be entered for the respondent.*

Reviewed by the Court.

TANNENWALD, *J.*, concurring: While I have, by joining in Judge Fay's dissent in *Popa v. Commissioner*, 73 T.C. 130 (1979), indicated my disagreement with the majority decision therein, I think it appropriate to note that *Popa*, as decided, does not dictate a conclusion contrary to that reached by the majority herein.

---

[2]This case is distinguishable from *Popa v. Commissioner*, 73 T.C. 130 (1979). There we said "we are prepared to assume, on the particular facts of this case, that the property at issue was either destroyed or pilfered with criminal intent." Here, the "property" involved was Vietnamese currency still held by petitioners. It was not destroyed. It simply lost value because of economic and military events. That is not a casualty or other deductible loss within the meaning of the Internal Revenue Code of 1954.

In both *Popa* and the instant case, respondent conceded the loss—in the instant case by stipulating that petitioners' South Vietnamese piasters became worthless.[1] The majority rationale in *Popa* that the most reasonable conclusion was that the taxpayer's property was "either destroyed or pilfered with criminal intent" is not as easily applicable in the instant case. The more likely cause of the piasters becoming worthless would appear to be governmental action by the North Vietnamese outlawing South Vietnamese currency as a medium of exchange; at least, petitioner has not carried his burden of proving otherwise. Under those circumstances, it seems to me that the instant case falls within the ambit of the category of cases denying a casualty loss where property is confiscated under color of local law.

GOFFE, *J.*, dissenting: I respectfully dissent. This case was reviewed by the Court at the same time it reviewed *Popa v. Commissioner*, 73 T.C. 130 (1979). I cannot agree with the majority that the instant case is so distinguishable from *Popa* to require a contrary result. In *Popa*, we held that the loss of property located in Saigon at the time Saigon fell into the hands of the invading North Vietnamese was a casualty loss. In the instant case the majority applies a "smell test" to deny a casualty loss deduction for the sudden worthlessness of South Vietnamese currency occasioned by the identical occurrence; the fall of the South Vietnamese Government to the invading North Vietnamese.

A concurring opinion attempts to reconcile the two opinions by pointing out that the South Vietnamese piasters became worthless by reason of governmental action of the North Vietnamese in outlawing them. The record in the case contains no evidence nor did the Court take judicial notice of any action on the part of the North Vietnamese Government to outlaw the South Vietnamese piasters; nor does respondent request such a finding of fact.

---

[1]Respondent's concession as to worthlessness makes inapplicable those cases denying deductions for mere diminution in value of foreign exchange. Additionally, I think this concession renders immaterial the fact that, in the instant case, the petitioner actually retained ownership and control of the piasters themselves.

Respondent concedes that the piasters became worthless and concedes that petitioners sustained a loss but argues that the piasters were confiscated by the government. This argument is contrary to the facts; i.e., the majority finds as a fact that petitioners are still in possession of the piasters.

The sole question presented is whether the loss sustained by petitioners was a casualty loss encompassed by the language of section 165(c)(3). The majority points out that Congress enacted legislation with respect to losses sustained in Cuba when Fidel Castro seized control of the government. Such an argument should apply with equal force in *Popa*, as pointed out in a dissenting opinion in that case. I fail to see a distinction between a loss sustained as a result of a civil revolution and one resulting from invasion by enemy forces.

The applicable language of section 165(c)(3) is "fire, storm, shipwreck, or other casualty." The majority, in applying its "smell test" relies upon the principle of statutory construction traditionally applied to this issue, ejusdem generis. The test has been applied in a host of cases, and the courts have found a loss to constitute a casualty loss in many factual situations. E.g., damage to residence from blasting operations in a nearby quarry, *Durden v. Commissioner*, 3 T.C. 1 (1944); loss by vandalism, *Davis v. Commissioner*, 34 T.C. 586 (1960); damage from landslide, *Heyn v. Commissioner*, 46 T.C. 302 (1966).

In my view the loss sustained by petitioners when their South Vietnamese piasters became worthless was sudden and cataclysmic and should entitle petitioners to a deduction for a casualty loss.