JAMES A. MORIARTY AND PATRICIA W. MORIARTY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moriarty v. Commissioner
Docket No. 26621-81.
United States Tax Court
T.C. Memo 1984-249; 1984 Tax Ct. Memo LEXIS 421; 48 T.C.M. (CCH) 59; T.C.M. (RIA) 84249; May 8, 1984. Louis J. Moriarty, for the petitioners. James C. Lanning, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes for their tax years 1975 and 1976: Additions to tax
Tax Year Ended
Deficiency
Sec. 6653(a) [1]
December 31, 1975
$5,526.00
$276.30
December 31, 1976
7,905.59
395.28
*423 After concessions, the following issues remain for our decision: (1) Whether petitioners may deduct $3,460.77 in each of their tax years 1975 and 1976 for the costs of maintaining an office in their home; (2) whether petitioners may deduct an additional $124.72 in 1975 for office supply expenses; (3) whether petitioners may deduct an additional $2,008.38 in 1975 for meetings and travel expenses in connection with trips to Florida and Arizona; (4) whether petitioners may deduct in 1975 and 1976 the respective additional amounts of $3,308.92 and $4,586.76 for expenses in connection with petitioner's claimed business use of an automobile; (5) whether petitioners may deduct in 1975 and 1976 the respective amounts of $3,443.00 and $4,005.90 for salaries paid to their children; (6) whether petitioners may deduct the additional amount in 1975 of $1,039.92 and the amount in 1976 of $382.07 for travel and telephone expenses in connection with petitioner's trips during those years to South Dakota; (7) whether petitioners may deduct as casualty losses the amount of $1,300 in 1975, for the destruction by oak wilt disease of fifteen oak trees, or the amount of $282.80 in 1976, for the destruction *424 of an automobile by fire; (8) whether petitioners may deduct in 1975 and 1976 the respective additional amounts of $681.22 and $1,360.33, for certain gifts and entertainment expenses relating to hospital employees and other doctors; (9) whether petitioners may deduct a combined amount of $1,840.09 in 1976 for certain academic and other travel expenses; (10) whether petitioners may deduct $88.80 in 1976 for certain legal and professional expenses; and (11) whether petitioners are liable for additions to tax under section 6653(a) for their tax years 1975 and 1976. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. James A. Moriarty (hereinafter referred to as "petitioner") and his wife, Patricia W. Moriarty (hereinafter referred to, collectively, as "petitioners") resided at 42 North Oaks Road in St. Paul, Minnesota at the time of filing the petition herein. For 1975 and 1976, petitioners filed joint Federal income tax returns, and for 1976, petitioners also filed an amended joint Federal income tax return. At all times here pertinent, petitioner was employed *425 as a professor of clinical medicine at the University of Minnesota (hereinafter referred to as "the University"). Issue 1. Home office
During 1975 and 1976, it was the official policy of the University to provide office space as well as patient interview and examination space for faculty members serving private patients in the University's medical center. Pursuant to such policy, petitioner, who was a University faculty member during 1975 and 1976, was provided with shared office space and with access to patient care facilities at the University. The patient care facilities which were available to petitioner at the medical center were used by him during the years here in issue both for University-related work and for his private practice. During a representative week in 1976, petitioner utilized the patient care facilities at the medical center for the outpatient treatment of private patients, for a total of 32 hours of clinic time. The office facilities which were available to petitioner at the medical center consisted of one small room, which he shared with another doctor. Notice to such other doctor from the executive officer of the Department of Neurology that *426 petitioner would be sharing the office was provided on November 27, 1973, and read, in pertinent part, as follows: The requirements for space for faculty necessitates [sic] the maximum utilization of existing allocations. For the time being therefore, Dr. Moriarty will office in Room 5321. * * * It is our understanding that [Dr. Moriarty] needs only a small amount of space. I do not think he will interfere with your work. [Emphasis added.] Petitioner stored at least a portion of his business records in this one-room office. In addition to office and patient care facilities, petitioner was furnished with and utilized the services of a typist and an operator to receive professionally-related telephone calls at the medical center. During 1975 and 1976, petitioner also saw private patients at his residence at 42 North Oaks Road in St. Paul, Minnesota, but such home visits were rare, and, since petitioner had no specialized medical equipment at his residence, were limited to initial evaluations. In addition, petitioner communicated by telephone with patients, other doctors, and hospital personnel and maintained some patient records at his home, but such calls *427 were transacted on the regular family telephone line, since petitioner had no separate telephone line at home for his medical practice. The foregoing activities were conducted in several rooms at petitioners' residence, including one bathroom, the dining room, the foyer, an upstairs reading room, and one additional room, described as petitioner's office. Since there was no separate entrance to such office, the few patients seen by petitioner at his home were required to enter at the front door of the residence and then walk through the foyer into the office. During 1975 and 1976, petitioner did not list his home as his professional address in the telephone book. For billing purposes during this period, petitioner utilized the services of an outside contract service. For 1975 and 1976, petitioners claimed deductions for expenses associated with the foregoing uses of their home, in the amount of $3,460.77 in each such year. Such claimed deductions were based upon petitioners' estimation that 32 percent of their home was used for these purposes, so that 32 percent of their established expenses of the household should be deductible. Respondent disallowed such deductions for *428 the reason that "it has not been established that these amounts were paid for the purpose designated." Issue 2. Office supplies
For 1975, petitioner claimed a deduction for office supply expenses in the amount of $1,294.41. Respondent determined that such deduction should be allowed only to the extent of $1,052.17, for the reason that petitioner had failed to establish that any of the additional $242.24 claimed "was for ordinary and necessary business expenses or was paid for the purpose designated." Of the $1,294.41 claimed, petitioners now concede that $117.52 was properly disallowed, leaving claimed office supply expenses in the amount of $124.72 still in dispute. Issue 3. Meetings and travel
During 1975, petitioner traveled, in separate trips, to Arizona and Florida. The trip to Florida was in connection with a convention of the American Academy of Neurology, held during late April and early May. Petitioner traveled to such convention, accompanied by his wife and five of their eight children, in a motor van. At the convention, petitioner listened to the presentation of papers and met with other doctors for the purposes of learning about recent medical developments *429 and making contacts in order to obtain future referrals. While petitioner was involved in such activities, petitioner's wife, who was a member of the Woman's Auxiliary of the American Academy of Neurology, attended a cruise, a card party, a luncheon and a four-hour bus tour of the Greater Miami area, along with other members of the Woman's Auxiliary. Petitioner believed that it was important to his medical practice for his wife to make contacts during such activities. Generally, petitioner considered his annual attendance at this convention to also be his vacation. On the comparable trip to Arizona, petitioner was accompanied by his wife, but not by any of his children. The activities on this trip, and the expenses in connection therewith, are not disclosed on this record. For 1975, petitioners claimed a deduction for the expenses of the foregoing trips to Florida and Arizona in the total amount of $3,400.67. Respondent determined that such deduction should be allowed only to the extent of $1,392.29, for the reason that petitioners had failed to establish that any of the additional $2,008.38 claimed "was for an ordinary and necessary business expense or was paid for the *430 purpose designated." Issue 4. Automobile expenses
As we have found, in addition to his employment as a professor of clinical medicine at the University, petitioner was involved during 1975 and 1976 in a private medical practice. Pursuant to such private practice, petitioner traveled during those years in one of his three automobiles, a 1976 Buick, from his home in St. Paul to the University's hospital and to other hospitals in the Minneapolis area. Over one-half of petitioner's use of such automobile during the years in issue was attributable to travel between his home and the University's hospital. The same automobile was additionally used during this period for travel to local medical meetings, to the airport for out-of-state medical meetings, to monthly advanced neurology meetings held at a local restaurant, and for some patient consultations. Petitioner also used the Buick for such personal uses as travel to stores, church, and social events. Petitioners did not maintain a log of mileage and expenses in connection with the use of the subject automobile. For 1975, petitioners claimed deductions for automobile expenses relative to petitioner's private medical practice, *431 in the amount of $4,433.83, consisting of the following items: $2,384.34
Gasoline
726.22
Repairs/tires
54.00
Garage maintenance
416.53
Insurance
313.42
Parking
539.32
Depreciation
$4,433.83
Total
For 1976, petitioners claimed deductions for automobile expenses relative to either petitioner's medical practice or to certain property management activities, in the amount of $6,357.37, consisting of the following items: $4,228.06
Auto expense (medical practice)
1,557.58
Depreciation of 1976 Buick
(medical practice)
97.99
Gasoline for local automobile
travel (property management)
473.74
Depreciation of 1976
Pontiac (property management)
$6,357.37
Total
Respondent determined that certain deductions for automobile expenses in 1975 and 1976 should be disallowed, as follows: The deductions totalling $4,413.70 [2] and $6,357.37 claimed on your 1975 and 1976 returns, respectively, as auto expense are reduced by $3,308.92 and $5,582.47 because it has not been established that more than $1,104.78 and $774.90 was for ordinary and necessary business expenses or was paid for the purpose designated. On brief, petitioners conceded *432 that $995.71 of their automobile expenses, as claimed for 1976, were properly disallowed by respondent, leaving a total of $4,586.76 in issue for that year. Issue 5. Children's salaries
Pursuant to his policy of involving his children in work activities, petitioner was assisted at his home in St. Paul during the tax years in issue by the following services performed by his four eldest children -- Anne, James, John and Thomas, who were of the respective ages in 1975 of 16, 15, 14 and 13: (1) Telephone - Answering telephone calls on the family's single incoming line, and taking messages, including calls from patients and from doctors concerning referrals *433 of patients to petitioner, as well as personal calls; (2) Correspondence - Preparing and mailing insurance forms, answering letters from patients, addressing envelopes and stamping outgoing mail, opening and sorting incoming mail, and reviewing computer statements concerning patient accounts; (3) Filing - Filing letters from patients and other medical and legal correspondence; categorizing information concerning the public assistance regulations of the five to fifteen states wherein petitioner's private patients resided; and (4) Cleaning - Cleaning the single bathroom which was associated with the room described by petitioner as his "office." In exchange for the foregoing services, during 1975, petitioner generally paid his oldest child, Anne, at the rate of $20 per week, and his youngest child, Thomas, at the rate of $10 per week. Petitioners' children were paid at slightly higher rates during 1976. Petitioners' children performed the foregoing services throughout each of the years in issue. Petitioner maintained no records of the numbers of hours that his children worked for him. For 1975 and 1976, petitioners claimed deductions for the foregoing salaries *434 paid to their children in the total respective amounts of $3,443.00 and $4,005.90. For 1975, said total was broken down, as follows: $1,200
Anne
853
James
760
John
630
Thomas
$3,443
Total
Respondent disallowed the foregoing deductions for the reason that "it has not been established that these amounts were for ordinary and necessary business expenses or were paid for the purpose designated." The reasonable value of the services performed by petitioners' four oldest children in assisting petitioner in his medical practice was $1,560 in 1975 and $1,716 in 1976. Issue 6. South Dakota travel expenses
During 1975 and 1976, petitioner made an undisclosed number of trips to South Dakota, where he owned several rental properties and 80 acres of farmland. Petitioner sometimes took his children with him on such trips to South Dakota, where his mother and brother resided, and petitioner always stayed at his mother's home on such trips. For 1975 and 1976, petitioners claimed travel and telephone expenses relative to the foregoing trips to South Dakota, in the amounts, in those respective years, of $1,062.92 [3] and $592.36, as follows: 1975
1976
Travel
$985.23
$473.09
Telephone
77.69
119.27
*435 Respondent determined that such deductions should be allowed only to the extent of $23.00 in 1975, for the reason that petitioners had failed to establish that any of the additional $1,039.92 [4] in 1975 or $592.36 in 1976, "was paid for the purpose designated." Of the $592.36 claimed in 1976, petitioners now concede $210.29, leaving in dispute $1,039.92 in 1975 and $382.07 in 1976. Issue 7. Casualty losses
For 1975, petitioners claimed two separate casualty losses for the death of a total of fifteen oak trees located on their property at 42 North Oaks Road in St. Paul, in the total amount, after insurance reimbursements, of $1,300, all of which was disallowed by respondent. Of the foregoing fifteen trees, thirteen *436 were red oaks, one was a white oak and the remaining one was unidentified herein as to type. The trees died during 1975 as a result of a disease known as oak wilt, which was described at trial by Dr. David W. French, who was involved in a long-term project for the redevelopment of oak trees in a four square mile area in St. Paul known as the North Oaks section, within which petitioners' residence was located, and who was also a forest pathologist and head of the Department of Plant Pathology at the University, as follows: Oak wilt is a disease, obviously, of oaks. It is caused by a fungus called ceratocystis fagacearum. It is a fungus that causes a vascular wilt-type disease, which means that it gets into the water transport system of the tree, shuts off the water supply, causes the trees to wilt and die rather quickly. * * * Generally speaking, in red oaks, the trees will completely wilt in a matter of days after the first evidence appears. In Dr. French's experience with trees in the North Oaks section, "essentially the only factor that has been responsible for trees dying in that community is the disease that we call oak wilt." Oak wilt, which attacks oak trees, is *437 similar in some respects to Dutch elm disease, which attacks elm trees. First, the primary infection vector for both diseases are insects within the same scientific category. Second, both diseases involve a blockage of the tree's vascular system. Third, the fungi which cause both diseases are in the same family and genus, and may be transported through common root systems with other like trees. Fourth, discoloration of a portion of the tree, called "flagging," may be symptomatic of both diseases. Fifth, treatment techniques may be similar. Unlike Dutch elm disease, which may take years to kill an elm tree, however, oak wilt progresses somewhat more quickly through a red oak tree. While Dr. French did not personally inspect petitioners' dead trees, based upon his examination of photographs of such trees, he estimated that they were each worth between "a few hundred dollars" and "$1,000 or more." For 1976, petitioners claimed deductions for two separate casualty losses relating to the destruction by fire of a 1968 automobile, in the amounts of $82.80 and $200, for a total of $282.80. Respondent disallowed both claimed casualty deductions for failure of substantiation. *438 Issue 8. Gifts and entertainment
Based upon gifts petitioner claims to have purchased for hospital employees, and "luncheon engagements" with other doctors, petitioners claimed deductions in 1975 and 1976 in the respective amounts of $1,001.37 and $1,430.48. Respondent allowed these deductions to the extent, in those respective years, of $320.15 and $70.15, for the reason that petitioners had failed to establish that any of the additional $681.22 in 1975 and $1,360.33 in 1976, met the substantiation requirements of section 274. Issue 9. Academic and other travel expenses
On their return for 1976, petitioners claimed deductions for "Travel-Academic" in the amount of $871.97 and for "Travel Expense for 27 days overnight" in the amount of $968.12, in connection with petitioner's claimed property management activities for a business styled on such return as "Marquette Properties & Development Co." Respondent disallowed both deductions in their entirety for the reason that petitioners had failed to establish that such amounts were ordinary and necessary business expenses, or were paid for the purposes designated. Issue 10. Legal and professional expenses
On their *439 return for 1976, petitioners claimed a deduction for legal and professional expenses relative to the foregoing entity known as Marquette Properties and Development Co., in the amount of $88.80. Respondent disallowed this deduction in its entirety for the reason that petitioners had failed to establish that such amount was an ordinary and necessary business expense, or was paid for the purpose designated. Issue 11. Additions to tax under section 6653(a)
Respondent determined additions to tax against petitioners for 1975 and 1976 in the respective amounts of $276.30 and $395.28, under section 6653(a), for negligence or intentional disregard of rules and regulations. OPINION The issues in this case relate to petitioners' entitlement to deductions for a number of claimed expenses, in excess of the amounts allowed by respondent. The law is well settled that deductions are matter of legislative grace and that a taxpayer seeking a deduction must prove that he satisfies the terms of the applicable statute allowing such deduction. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Respondent's determinations in the notice of deficiency are presumed *440 to be correct and petitioners bear the burden of proving any error in such determinations. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 162(a) authorizes a deduction for the ordinary and necessary expenses of carrying on a business in the year such expenses are paid. Section 212 authorizes a deduction for certain ordinary and necessary expenses for the production of income. In each instance, the burden is upon the taxpayer to show that such expenses were actually paid and that they were paid for a qualifying purpose. With respect to deductions for business travel, entertainment, meals and gifts, section 274 imposes additional requirements. See Gilman v. Commissioner,72 T.C. 730 (1979); Ashby v. Commissioner,50 T.C. 409 (1968). In particular, section 274 requires that a taxpayer substantiate "by adequate records or by sufficient evidence corroborating his own statement" the amount of the expense, the time and place of the travel or entertainment or the date and description of the gift, the business purpose of the expense, and the business relationship to the taxpayer of the person entertained or receiving *441 the gift. In order to meet the adequate records test, a taxpayer must maintain an account book, diary, statement of expense or similar record prepared contemporaneously with the expenditure, and documentary evidence of certain expenditures, such as receipts or bills, which, in combination are sufficient to establish each element - amount, time, place, business purpose, and business relationship - of an expenditure. Section 1.274-5(c)(2), Income Tax Regs.
In the absence of adequate records to substantiate each element of an expense, a taxpayer may alternatively establish such elements; (i) By his own statement, whether written or oral, containing specific informal in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If *442 such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence. [Sec. 1.274-5(c)(3), Income Tax Regs.] In light of the foregoing legal principles, we turn next to a separate consideration of each of the claimed deductions at issue herein. Issue 1. Home office
As to petitioners' claimed home office deduction for 1975, petitioners maintain that petitioner's home office meets the standards for deductibility under section 162(a) as they existed prior to 1976, while respondent contends that the expenditures in issue were personal and therefore nondeductible under section 262. [5] Prior to the enactment of section 280A in 1976, [6] we engaged in a weighing and balancing of all of the facts to determine if the expenditures were, on the one hand, "ordinary and necessary" business expenses under section 162(a), or, on the other hand, personal expenses under section 262. Wisconsin Psychiatrix Services v. Commissioner,76 T.C. 839, 847 (1981); Sharon v. Commissioner,66 T.C. 515, 524 (1976), *443 affd. 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979). For 1976, on the other hand, the specific home office provisions of section 280A govern. Section 280A provides as a general rule that "no deduction * * * shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Section 280A(c)(1), provides, in pertinent part, the following exceptions to this general rule: (1) Certain Business Use. -- Subsection (a) shall not apply to any item to the extent such item is allocable *444 to a portion of the dwelling unit which is exclusively used on a regular basis - (A) the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business * * *. [Emphasis supplied.] In determining a taxpayer's principal place of business under this exception, we must ascertain the "focal point" of his business activities. Jackson v. Commissioner,76 T.C. 696, 700 (1981). In determining whether a taxpayer's dwelling unit is used by patients in meeting with the taxpayer in the normal course of his business, the mere incidental or occasional business use of a portion of such dwelling unit, even if used for no other purpose, will fail to qualify. Jackson v. Commissioner, supra.
In the instant case, we have found, by stipulated fact, that petitioner was employed as a professor of clinical medicine at the University. Petitioners maintain that petitioner was additionally employed in a private medical practice, and that the office for such practice was located at their *445 residence. While we agree that petitioner was involved, at least to some extent, in a private medical practice in both 1975 and 1976, we cannot agree that petitioners have met their burden of proving for either such year that such practice was principally conducted out of an office located in his home, rather than out of the University's medical center facilities. As we have found, pursuant to University policy, petitioner was provided with shared office space and with access to facilities for patient care at the University's medical center. Such facilities, which petitioner used in connection with the treatment of his private patients, included one shared office, as well as space for patient interviews and examinations. While petitioner testified that the other doctor, with whom he shared the medical center office, suffered from a neurological disorder which, together with the smallness of the space, impeded his full use of such office, there is no indication herein that petitioner was not fully able to transact his private medical business in the foregoing assigned medical center facilities. Indeed, prior to placing petitioner in the shared office, it was the expressed understanding *446 of the executive officer of the neurology department that petitioner required only a small amount of office space. Petitioner kept at least a portion of his business records in his medical center office, and received professional telephone calls and had business-related typing done at such University facilities, with the assistance of University personnel. Further, during a representative week in 1976, petitioner utilized the medical center patient care facilities for outpatient treatment of his private patients for a total of 32 hours of clinic time. By contrast, there is no evidence in this record to show that petitioner held himself out to the public as practicing medicine in his home at 42 North Oaks Road in St. Paul, Minnesota. Petitioner did not list his home as his professional address in the telephone book in either 1975 or 1976. For billing purposes, petitioner utilized the services of an outside organization. At trial, petitioner admitted that he saw patients only on a "rare" and "occasional" basis at his residence, and since petitioner maintained no specialized medical equipment at his home, any such patient visits were limited to relatively brief "initial evaluations. *447 " There was neither a private entrance nor a private telephone line at petitioner's residence for his private medical practice, and neither the specific sizes, uses, arrangement nor contents of the rooms purportedly allocated for such purposes are described in this record. [7] It is clear that at least some of the claimed office space, e.g. the foyer and dining room, was used for personal as well as business purposes. Finally, the amounts claimed by petitioners as deductions for the home office in each year are simply based upon petitioner's oral estimate, without other substantiation, that 32 percent of petitioners' total expenses with respect to their home, as detailed in the record, were attributable to the maintenance of an office in the home.
We accordingly conclude that petitioners have failed to demonstrate their entitlement to deductions for home office expenses, either under section 162(a) for 1975, see Meehan v. Commissioner,66 T.C. 794, 806-808 (1976), or, a fortiori, under section 280A for 1976, see Frankel v. Commissioner,82 T.C. 318 (1984); *448 Jackson v. Commissioner,supra.[8]
Issue 2. Office supplies
In support of their claimed deduction for office supplies, petitioners rely upon the following three exhibits: (1) one page from the books and records used by petitioners in preparing their return for 1975, compiled by a third party under petitioner's direction, and reflecting "1975 Receipted Cash Expenditures" for "office supplies" in the amounts of $147.93 and $114.89; (2) schedules prepared by agents of respondent, setting forth expenses for which receipts had been presented to respondent, and reflecting the following entries under the heading "Office Supplies - 1975:" Description
Amount
Allowed
Disallowed
Cancelled Cks.
$892.97
$892.97
Cash - postage - receipt
21.10
21.10
Cash - no receipts
147.93
138.10
$9.83
Cash - no receipts
114.89
114.89
Unknown
117.52
117.52
(3) a photocopy of one page of the revenue agent's workpapers, reflecting a difference of $401.44 between petitioners' office supply expenses for 1975 "per return" and "per books," comprised of several items *449 which were described as follows: Cash postage
$ 21.10
Cash office supplies
147.93
Cash office supplies
114.89
Unknown
117.52
Total
$401.44
There is no evidence that the one page excerpt from the books and records prepared on petitioners' behalf for 1975, which was admitted into evidence herein, reflected solely business expenditures. Indeed, reflected together with "office supplies" on such exhibit are such apparently personal entries as "dentist," "eyeglass repair," and "school bus." Nor, as reflected in the following colloquy, did the sole testimony on thie issue, which was presented by petitioner, shed any additional light on the nature of the additional office supply deduction contended for: Q. In fact, that is not a detailed breakdown of those supplies; is it? That's a summary. A. It's a total; yes. Q. And, in fact, there is no detail of what those amounts were spent for; is there? In this record. A. The code on the front says "one." * * * Well, this is her method of categorizing. Q. So, in fact, you are not familiar with how this is prepared; are you, Doctor? A. Yes, I am, but not * * * totally. You can be familiar without being *450 totally familiar. * * * I don't understand this system. On this record, neither the foregoing exhibits nor petitioner's testimony provides any basis to conclude that the subject expenditures qualify for deductibility under section 162, or any other section of the Code. Issue 3. Meetings and travel
Respondent's determination on this issue rests upon his disallowance of that portion of petitioners' meeting and travel expenses for the trips to Florida and Arizona, which was attributable to petitioner's family. These expenses are of the type described in section 274, and we are in agreement with respondent that petitioners have failed to produce any credible evidence to substantiate a business purpose for the meetings and travel expenses attributable to petitioner's wife and children. Section 1.274-5(b)(1), Income Tax Regs.; cf. Holswade v. Commissioner, 82 T.C.     #53 1984). As to the Florida trip, petitioner conceded at trial that his children did nothing which related to his medical practice. Furthermore, as we have found, petitioner's wife's activities on such trip consisted of attendance at varous social events in the Miami area *451 together with other members of the Woman's Auxiliary of the American Academy of Neurology. Petitioner's general testimony that he believed that it was important to his business for his wife to make contacts in such activities, fails to meet the requirements for adequate records or sufficient corroborative evidence of a business purpose called for under section 274. See section 1.274-5(c)(1).
Petitioner has failed to produce any evidence herein concerning the expenses or activities of the Arizona trip. Petitioners also contend that respondent attributed an excessive portion of their expenses on the Florida and Arizona trips to petitioner's family, resulting in the erroneous disallowance of a portion of such expenses. The sole evidence presented on this point consisted of petitioner's following testimony concerning the Arizona trip: Q. And do you feel that the Revenue Agent was proper in disallowing 50 percent of the $904 claimed for the Arizona trip? A. Well, no. * * * Her expenses weren't that much, in the first place. * * * Q. * * * [W]hat do you mean? A. Well, the room was, I think, $37 one night and had it been a single room it would have been $32. This *452 vague, incomplete and wholly uncorroborated testimony fails to support petitioners' burden of proof on this issue. Issue 4. Automobile expenses
While petitioners alleged error in their petition as to respondent's disallowance of automobile expenses relating both to petitioner's medical practice and to his property management activities, they have offered proof only as to those automobile expenses which were attributable to the medical practice. In this regard, petitioners maintain that petitioner's travel in his 1976 Buick between his home and the hospital at the University, and other hospitals, should be considered to be business travel because petitioner's office was located in his home. However, we have already concluded that petitioners have failed to demonstrate that petitioner's office was in his home for either of the years in issue. Accordingly, the expenses of petitioner's travel between his home and the University's hospital, which constituted in excess of one-half of the use of the subject automobile, and between his home and other hospitals in the Minneapolis area, were personal commuting expenses which were not deductible under section 162. Sheldon v. Commissioner,50 T.C. 24 (1968); *453 Buccino v. United States,3 Ct. Cl. 658 (1983); 52 AFTR 2d 83-6344, 83-2 USTC par. 9697; section 1.262-1(b)(5), Income Tax Regs. Compare Curphey v. Commissioner,73 T.C. 766, 777-778 (1980). As to the remaining uses of the 1976 Buick, in light of the absence of any log reflecting mileage or expenses, or of any testimony on this point, we would be unable to allocate between such acknowledged uses as trips to stores, church or social events, which we have found to be personal, and such potentially business uses as trips between hospitals or to certain medical meetings. On this record, we are not persuaded that respondent's allocation between business and personal automobile expenses for 1975 and 1976 was in any respect erroneous. Issue 5. Children's salaries
Compensation is deductible under section 162(a)(1) only if it is: (1) Reasonable in amount; (2) based on services actually rendered; and (3) paid or incurred. Respondent does not challenge petitioners' assertion that the sums in issue were paid to their children, but maintains that such payments constituted nondeductible intra-family transfers *454 of funds. Petitioners, on the other hand, maintain that such payments constituted reasonable allowances for personal services actually rendered by four of their children in connection with petitioner's medical practice. Whether amounts paid for services are reasonable and represent payments purely for services are questions of fact to be resolved on the basis of all of the surrounding facts and circumstances. Eller v. Commissioner,77 T.C. 934, 962 (1981). The fact that payments are made to minor children by a related party does not preclude their deductibility. Eller v. Commissioner,supra;Denman v. Commissioner,48 T.C. 439, 448-451 (1967). Exercising our best judgment in light of all the evidence, Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928), we are persuaded that petitioners' children performed substantial services in connection with petitioner's private medical practice, the reasonable value of which was a total of $1,560 in 1975 and $1,716 in 1976. These values are based upon fifty-two weeks of service performed by each *455 child in each of the years in issue at the following rates, with a 50 percent negative adjustment resulting from petitioners' failure to prove that the household telephone answering services [9] or bathroom cleaning services [10] performed by their children qualify for deduction: Weekly compensation
1975
1976 [11]
Anne
$20
$22
James
[12] 20
22
John
10
11
Thomas
10
11
*456 Issue 6.South Dakota travel expenses
In support of their claim for the deductibility of certain expenses associated with petitioner's trips to South Dakota, petitioners rely upon two exhibits which were entered into evidence herein -- a schedule listing certain checks and receipts which were presented by petitioners to respondent's agents; and a number of receipts and handwritten notes which, according to petitioners, relate to the subject trips. While petitioners' counsel acknowledged at trial that some duplication existed in the expenses reflected on these two exhibits, no showing has been made as to the extent of any such duplication. Petitioner testified herein that his brother and mother lived in South Dakota, that he stayed with his mother on trips to South Dakota during 1975 and 1976, and that he sometimes took his children on such trips. Petitioners have failed to provide any allocation of petitioner's expenses on such trips either between business and personal purposes, or between petitioner and his children. In addition, the receipts and handwritten notes relied upon by petitioners for 1975, relate not only to South Dakota expenses, but also to expenses apparently *457 incurred by petitioner relative to a separate trip to Iowa, a council meeting at St. Anthony's Village in Minneapolis, unrelated trips to the office of his attorney, and other unexplained items with no apparent relationship to the South Dakota trips. Even as to the South Dakota trips, moreover, petitioners have failed to substantiate a business purpose for each expense claimed with respect thereto. In short, the expenses in issue are of the type described in section 274, and petitioners' evidence herein fails to meet the substantiation requirements of that section, and is insufficient to overcome respondent's disallowances for 1975 and 1976. See BJR Corporation v. Commissioner,67 T.C. 111, 128 (1976). [13]
Issue 7. Casualty losses
Petitioners claim that they are entitled to a casualty loss deduction of $1,300.00 for their 1975 tax year. Section 165(c) provides for the deduction of any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of individuals, the deduction is limited to losses incurred in a trade or business, in *458 any transaction entered into for profit, and with respect to any nonbusiness property if such loss is from fire, storm, shipwreck, theft, or "other casualty." There is no contention herein that petitioners' oak trees either constituted business property, or were destroyed by fire, storm, shipwreck or theft, so we must determine whether their loss resulted from some "other casualty" within the meaning of section 165(c). In the context of assessing the deductibility under section 165(c) of losses of trees resulting from Dutch elm disease, this Court recently held in Coleman v. Commissioner,76 T.C. 580, 589 (1981), as follows: The term "other casualty" is not defined in the statute or in the legislative history of the provision. However, the courts, applying the rule of ejusdem generis, have held that the term "other casualty" means something similar to a fire, storm, or shipwreck in requiring a sudden, unusual, unexpected, and accidental force or agency to be applied against the property. The term is usually defined to mean "an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily *459 operating cause." Fay v. Helvering,120 F.2d 253 (2d Cir. 1941). That definition has been held to exclude losses arising from such things as termites, dry rot, and rust, with the exception of the socalled "fast termite" cases * * *. Hoppe v. Commissioner,42 T.C. 820, 823 (1964), affd. 354 F.2d 988 (9th Cir. 1965). In any event, it is clear that the casualty loss provision is not "designed to take care of all losses that the economic world may bestow on its inhabitants." Billman v. Commissioner,73 T.C. 139, 141 (1979). In determining in Coleman that the taxpayers' trees were killed by disease, we rejected the argument of the taxpayers that the likely transmittal of the Dutch elm disease by an insect was comparable to a sudden attack or invasion of insects, as in the "fast termite" cases, and held that "a loss caused by disease, whether the disease-causing organism infects the host suddenly or over a period of time, * * * represents 'the progressive deterioration of property through a steadily operating cause' ( Fay v. Helvering,supra) and does not constitute a casualty loss." Coleman v. Commissioner,supra at 593. *460 See also Maher v. Commissioner,76 T.C. 593 (1981), affd. 680 F.2d 91 (11th Cir. 1982). We believe that this holding clearly controls our determination of the present issue, [14] particularly in view of the manifold similarities between Dutch elm disease and oak wilt disease which were described at trial by Dr. French and which we have found. [15] Petitioners are accordingly not entitled to a casualty loss deduction in 1975 for their loss of fifteen trees as a result of oak wilt disease. [16]
*461 As to their 1976 claim for two casualty losses totaling $282.80, petitioner simply testified that his 1968 car caught fire, while on the road, burned, and was a total loss. Accepting that this is credible evidence of a casualty loss under section 165(c)(3), we have no evidence as to the value of the car at the time of the fire, nor of petitioner's cost basis therein, section 165(b). Lacking such evidence, we must sustain respondent's determination. Issue 8. Gifts and entertainment
For 1975 and 1976, respondent disallowed gifts and entertainment expenses claimed by petitioners in the respective amounts of $681.22 and $1,360.33. These expenses are of the type described in section 274. With respect to entertainment expenses, section 1.274-5(b)(3), Income Tax Regs., requires that the taxpayer prove the amount, time, place, and business purpose of the expenditures, and the business relationship to the guest of the taxpayer. As was the case with their claimed travel expenditures, supra, petitioners failed to introduce evidence with respect to these claimed entertainment expenses which complied with these strict substantiation requirements. *462 With respect to expenditures for business gifts, section 1.274-5(b)(5), Income Tax Regs., requires that the taxpayer describe the gift, prove the cost of the gift, the date of the gift, the business purpose of the gift or the nature of the business benefit derived or expected to be derived from the gift, and the business relationship of the recipient of the gift. Again, the evidence introduced by petitioners -- consisting of a list showing date, amount, and name of payee, e.g. "Campus Club," "City Drug," etc. -- failed to satisfy these substantiation requirements. Respondent must therefore be sustained. Issue 9. Academic and other travel expenses
At trial, petitioners elected to combine their evidentiary presentation with respect to their separately claimed deductions in 1976 of $871.97 for academic travel, and $968.12 for travel related to the management of certain property. Once again, the subject travel expenses are of the type described in section 274. In support of the deductibility of such expenses, petitioners rely solely upon a haphazard grouping of handwritten notes, which purportedly relate to the subject travel during 1976 for *463 academic and property management purposes, but which include such items as expenses incurred at a meeting of the Minnesota Physicians United for Human Life group relative to the abortion rights controversy, expenses incurred by third persons on ostensibly unrelated travel, such as a trip to Florida, and other items with no apparent relationship to the deductions claimed. Apart from this apparent intermingling of unrelated evidence, moreover, in the absence of corroborative evidence, none of the notes submitted are sufficient to substantiate the claimed business travel deductions under section 274, and we must hold for respondent on this issue. Issue 10. Legal and professional expenses
No credible evidence was presented in support of these claimed deductions and at trial, petitioner could not recall with certitude what they related to. As to this issue, petitioners have failed to demonstrate error in respondent's determination. Issue 11. Additions to tax under section 6653(a)
Respondent determined additions to tax under section 6653(a), having determined that petitioners were negligent, or intentionally disregarded respondent's rules and regulations. The burden *464 of proof on this issue was upon petitioners. Enoch v. Commissioner,57 T.C. 781, 803 (1972); Rule 142. Petitioners failed to allege error in their petition with respect to respondent's determination of additions to tax under section 6653(a), as required by Rule 34(b)(4). Rather, petitioners first raised such an allegation of error in their reply brief, in the most cursory fashion. Even taking the most charitable view of the situation, and treating the issue as one tried by the consent of the parties without formal pleading under Rule 41(b), however, petitioners have clearly failed to meet their burden of proof on this issue, and we therefore sustain respondent's determination of additions to tax. To reflect the foregoing, Decision will be entered under Rule 155.
[17]
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.↩
2. While both parties on brief apparently assumed that the $4,413.70 referred to in the deficiency notice constituted the entirety of the automobile expenses claimed by petitioners for 1975, as we have found, such claimed expenses actually totaled $4,433.83 in that year. In view of the language in the statutory notice of deficiency, and the failure of respondent to claim disallowance of any additional amount in these proceedings, we conclude that the discrepancy of $20.13 has been conceded by respondent herein.↩
3. While the statutory notice of deficiency indicates that petitioners claimed a deduction for expenses relating to the trips to South Dakota in the amount of $1,069.92, our review of petitioners' Federal income tax return for 1975, which was entered into evidence herein, discloses that only $1,062.92 was actually claimed.↩
4. For the reason discussed in note 3, supra,↩ this amount was incorrectly calculated in the notice of deficiency at $1,046.92.
5. Sec. 262 provides that, except as otherwise expressly provided, no deduction is allowed for personal, living, or family expenses. ↩
6. Sec. 280A, added to the Internal Revenue Code by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, to provide "definitive rules * * * governing the deductibility of expenses attributable to the maintenance of an office in the taxpayer's personal residence," S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185; H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 852, applies to taxable years beginning after December 31, 1975.↩
7. Compare Wisconsin Psychiatric Services v. Commissioner,76 T.C. 839, 847-848↩ (1981).
8. See also Cally v. Commissioner,T.C. Memo. 1983-203↩.
9. Our disallowance of salary expenses relating to telephone answering services rests upon several considerations. First, petitioners' single incoming line serviced both personal and business-related calls at their residence. Second, petitioners maintained no records which would permit an allocation respecting the business portion of their home telephone use. Third, petitioner testified that his younger children, who were not compensated, similarly received calls and recorded messages at his Residence. See Furmanski v. Commissioner,T.C. Memo. 1974-47↩. 10. As we have found, petitioner's so-called "office," with which the single bathroom cleaned by the children was associated, did not constitute a home office for Federal tax purposes. ↩
11. Based upon our findings, we have assumed a 10 percent increase in the children's salaries for 1976. ↩
12. This record does not disclose the amount of the weekly rates paid to James and John, but we have assumed that they were paid at rates which were equivalent, respectively, to those paid to Anne and Thomas.↩
13. See also Kennedy v. Commissioner,T.C. Memo. 1980-310↩.
14. Each of the several cases relied upon by petitioners, McKean v. Commissioner,T.C. Memo. 1981-670; Black v. Commissioner,T.C. Memo. 1977-337; and Smithgall v. United States,47 AFTR 2d 81-695, 81-1 USTC par. 9121, (N.D. Ga. 1980), involved the destruction of trees caused by insects, rather than disease. See, e.g., Coleman v. Commissioner,76 T.C. 580, 591 at n. 10 (1981) (distinguishing Black v. Commissioner,T.C. Memo. 1977-337↩). 15. As to the suddenness of the lethality of oak wilt disease, we note that Dr. French testified that "once established [the fungus] moves very rapidly throughout the entire vascular system * * * [a]nd shortly after, the tree wilts; very shortly after the tree wilts and dies." While Dr. French then testified that red oaks will "completely wilt in a matter of days after the first evidence appears," this record fails to disclose the amount of time which typically passes, first, between the time the tree contracts the disease and the time the first evidence appears, or second, between the time the tree wilts and the time that it dies. ↩
16. So holding, we need not give further consideration to the lack of acceptable evidence herein concerning the value of said trees, or petitioners' cost basis therein. See sec. 165(b).↩
17. Petitioners failed herein, on brief, to provide "[p]roposed findings of fact * * *, based on the evidence, in the form of numbered statements, each of which shall be complete * * *," in contravention of the requirements of Rule 151(e)(3). We admonish petitioners' counsel to adhere to our Rules in any future proceedings before this Court.↩