BRUCE P. JOHNSON AND WILDA L. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
JOHNSON v. COMMISSIONER
Docket No. 19207-81.
United States Tax Court
T.C. Memo 1984-599; 1984 Tax Ct. Memo LEXIS 73; 49 T.C.M. (CCH) 91; T.C.M. (RIA) 84599; November 19, 1984. Bruce P. Johnson, pro se. Elaine T. Moriwaki, for the respondent. GOFFE MEMORANDUM FINDINGS *75 OF FACT AND OPINION GOFFE: Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1979 in the amount of $480. The issue for decision is whether petitioners may deduct the cost of an unfinished aircraft as a capital loss, casualty loss, trade or business loss, abandonment loss, or bad debt loss. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. Petitioners Bruce P. and Wilda L. Johnson, husband and wife, were residents of Long Beach, California, at the time the petition in this case was filed. Petitioners timely filed a joint Federal income tax return for the taxable year 1979 with the Internal Revenue Service Center at Los Angeles, California. Petitioner Bruce P. Johnson (Mr. Johnson) has been a licensed pilot since approximately 1958, but has been employed during that period as a pipe-fitter. In 1973, Mr. Johnson began buying parts to build a custom aircraft (Model Bede 5) according to plans furnished by Bede Aircraft, Inc. (Bede). Such purchases continued until 1975. Mr. Johnson made all but one *76 purchase of aircraft parts from Kibler-Bede Aircraft, Inc., the local authorized dealer for Bede. Mr. Johnson paid $4,685.68 for parts and $95.63 for transporting the parts to him. The drive system, engine, long wings and electrical system, which cost a total of $1,203.50 (included in the $4,685.68 figure), were paid for, but never received. Mr. Johnson also maintained a journal of amounts paid for miscellaneous expenses such as electric drills, screwdriver sets, file sets, drill bit sets, "C" clamps, paint, spatulas and "x-acto" knives. As each stage of construction was completed, Mr. Johnson was required to obtain approval of the construction from the Federal Aviation Administration (FAA) before proceeding to the next phase of construction. On July 31, 1974, the FAA approved the construction of the wings, the wing stabilizers, and the vertical and horizontal tail stabilizers. Bede filed a petition in Federal bankruptcy during 1979 in Wichita, Kansas.A court-ordered auction of all Bede assets, including the inventory of aircraft parts, was set for June 18 and 19, 1979. Petitioners filed a claim against Bede Aircraft, Inc. in the bankruptcy matter as a part of a *77 group or class of creditors. The bankruptcy case of Bede Aircraft, Inc. was still open as of July 21, 1983. Petitioners have not sold, exchanged or otherwise disposed of the partially constructed aircraft. Further, the cost of the parts necessary to complete construction of the aircraft plus the cost of the present structure would exceed the potential sales price.Petitioners have never sold any other aircraft although, prior to 1958, Mr. Johnson worked for Douglas Aircraft Company, which sold aircraft. Petitioners have never constructed any other aircraft although Mr. Johnson has worked on the construction of aircraft in his capacity as an employee. Mr. Johnson planned to fly the aircraft himself once it was completed and before it was sold. Petitioners deducted $4,000 as a long-term capital loss on their joint Federal income tax return for the taxable year 1979. On July 1, 1981, the Commissioner issued a statutory notice of deficiency to petitioners for the taxable year 1979. The Commissioner disallowed the entire capital loss claimed by petitioners on the basis that petitioners did not establish that the amount claimed on their return was "(a) a loss (b) which *78 is allowed as an adjustment to your Income [sic] and (c) sustained by you." OPINION The issue for decision in whether petitioners may deduct the cost of an unfinished aircraft as a capital loss, casualty loss, trade or business loss, abandonment loss, or bad debt loss. Deductions are a matter of legislative grance, and taxpayers must satisfy the specific requirements of the deductions they claim. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Respondent's determinations are presumptively correct and petitioners bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [1]
Petitioners claimed the cost of the unfinished aircraft as a long-term capital loss on their return. Petitioners argue that they have sustained either a capital loss or a casualty loss in the amount of $4,000 *79 because they cannot obtain the parts necessary to complete the aircraft at a reasonable cost. Petitioners contend that the loss occurred when it became apparent, as a result of Bede's bankruptcy filing in 1979, that they would be unable to complete the aircraft at a cost allowing for profit upon sale. Respondent contends that petitioners have sustained no deductible loss on the basis that: (1) there was no capital loss in the taxable year 1979; (2) there was no casualty within the meaning of section 165(c)(3) during the taxable year 1979; (3) petitioners' construction of the aircraft did not constitute a trade or business; (4) the aircraft project was not abandoned during the taxable year 1979; and (5) the fact that Bede filed for bankruptcy in 1979 is insufficient basis for a bad debt deduction under section 166(d)(1)(B). Petitioners' primary argument is that the loss is deductible as a long-term capital loss. Such capital losses are deductible by an individual under section 1211(b) when they result from the sale or exchange of business, income-producing or investment property. Losses from sales of personal property are not deductible. *80 Wrightsman v. United States,428 F.2d 1316 (Ct. Cl. 1970). Even if we were to assume that the aircraft was either investment property or business property, there has been no sale or exchange, and hence no capital loss. Sec. 1211(b). In the alternative, petitioners argue that the loss occurred as the result of a casualty, which is defined, under section 165(c)(3) as: losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * Petitioners have failed to present any evidence of a casualty of the sort listed under section 165(c)(3). An economic detriment, in and of itself, is not a casualty. Billman v. Commissioner,73 T.C. 139 (1979). Implicit in petitioners' arguments is a contention that this loss is deductible as a trade or business loss under section 165(c)(1). "Trade or business" has been defined as extensive activity over a period of time for the purpose of producing income. Fischer v. Commissioner,50 T.C. 164, 171 (1968). We are unable to find that the building of one, incomplete aircraft over the course of six years constitutes *81 a trade or business under section 165(c)(1), despite Mr. Johnson's apparent ability to eventually complete the aircraft if he finds it both feasible and economical to do so.[2]
A third type of loss deductible by an individual under section 165 is an abandonment loss, evidenced by a closed and completed transaction, and fixed by identifiable events. Sec. 1.165-1(b), Income Tax Regs. Petitioners must establish an intent to abandon, coupled with an act of abandonment ascertainable from the facts and circumstances of the case. Massey-Ferguson, Inc. v. Commissioner,59 T.C. 220 (1972).Mere non-use of the asset is insufficient to constitute an abandonment. Burke v. Commissioner,32 T.C. 775 (1959), affd. 283 F.2d 487 (9th Cir. 1960), nor has an abandonment occurred based upon a claimed loss of value when the taxpayer has neither abandoned nor intends to abandon the asset. *82 A.J. Industries, Inc. v. United States,503 F.2d 660 (9th Cir. 1974). Petitioners presented no evidence of an abandonment in the taxable year 1979. Finally, when an individual pays for goods, but does not receive them, the individual may have a bad debt deductible under section 166(d)(1)(B): where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year. The bad debt must, however, be shown to be totally worthless in the year for which the bad debt is claimed. Sec. 166(d)(1)(A). The fact that the debtor has filed a peition in bankruptcy establishes the likelihood that some part of the debt is worthless, section 1.166-2(c), Income Tax Regs., but not that the entire debt is worthless. Teitelbaum v. Commissioner,294 F.2d 541 (7th Cir. 1961), affg. a Memorandum Opinion of this Court. Petitioners' claim was still pending as of July 21, 1983, and thus the debt did not become worthless within the taxable year 1979. The fact that this debt was not deductible for the taxable year *83 1979 does not preclude a deduction in a later taxable year should the requirements of section 166 be met. While we are sympathetic to petitioners' inability to either recover the funds paid to Bede for which they received no parts, or to reasonably complete their aircraft, petitioners have failed to present sufficient evidence to support allowance of a deduction under section 165 or section 166 for the taxable year 1979. Petitioners here, therefore, failed to meet their burden of proof under Rule 142(a). The Commissioner's determination to disallow the deduction for the incomplete aircraft is sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, and attendant regulations as amended and in effect for the relevant years, and all rule references are to this Court's Rules of Practice and Procedure.↩
2. Neither party contend that the facts reflect a "transaction entered into for profit" under section 165(c)(2)↩ or an activity "not engaged in for profit" under section 183.